## Bauer v. Illinois Central Railroad Company.

(Decided December 2, 1913).

### Appeal from Jefferson Circuit Court
### (Common Pleas Branch, Second Division).

1. Railroads—Crossings—Gates Down at Crossings—Ordinary Care. —If, when the gates are down at a railroad crossing, a person goes under the gates and gets on the railroad track, he takes the risk and cannot recover unless those in charge of the train by the exercise of ordinary care, could have avoided the injury to him, after the discovery of his peril, or after they could, by ordinary care, have discovered it.

2. Railroads—Negligence.—Where the plaintiff is guilty of negligence in going upon the railroad track, he cannot recover, although those in charge of the train were also guilty of negligence in running the train too fast, if but for his own negligence the injury would not have happened.

3. Railroads—Duty to Stop or Check Train.—Those in charge of a train are under no duty to stop or check it, on seeing a person near the track, unless they have reason to know that he is not aware of the approach of the train, and will probably be endangered by it.

O'DOHERTY & YONTS for appellant.

TRABUE, DOOLAN & COX, BLEWETT LEE and C. L. SIVLEY for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON—
Affirming.

Green street in Louisville runs east and west; Fourteenth street runs north and south. There are two railroad tracks on Fourteenth street. Rudolph Bauer lived on the south side of Green street in the second house west of Fourteenth street. As he was crossing Fourteenth street about seven o'clock in the evening in March, 1909, he was struck by the tender of an engine of the Illinois Central Railroad Company, and received injuries to recover for which he brought this action. On the first trial of the case he recovered a verdict for $1,200. The court granted a new trial and on the second trial there was a verdict for the defendant. The court again granted a new trial; on the third trial there was a verdict again for the defendant. The court entered judgment on the verdict, and Bauer appeals.

The facts of the case as shown by the weight of the evidence are these: Gates are maintained at Fourteenth street for the protection of the public from passing trains. The gates were down when Bauer came up to the street crossing. He stooped under the gate and went over to the curb, standing there while the freight train was passing going south on the east track. When all of the freight train had passed except three or four cars he left the curb and walked out into the street, and about the time he got within three feet of the west track, he was struck by the tender of the engine backing north on that track, moving according to the weight of the evidence six or eight miles an hour, but according to the evidence for him very much faster. The engine

bell was ringing; there was a red light on the end of the tender and a brakeman also stood there with a lantern in his hand. The bell at the tower was ringing; the watchman at the tower saw Bauer's danger and called to him, also a man standing on the opposite corner, but he did not hear their calls in time to avoid being struck. The fireman on the tender did not see him until very close to him because of the fact that the smoke from the freight train which was just passing had settled over the track. Bauer's attention was also upon the cars of the passing freight train.

The court in instruction 1 told the jury in effect that it was the duty of the defendant's engineer in charge of the engine in operating it to exercise ordinary care to have it under reasonable control, to keep a reasonable lookout ahead for persons on the crossing or so near it as to be in danger of being struck by the engine; that it was the duty of the fireman of the engine to exercise ordinary care to give timely notice of the engine's approach to the crossing by ringing the bell, and that it was the duty of the brakeman who was on the tender of the engine to keep a reasonable lookout ahead for persons on the track or so close thereto as to be in peril from its movement; and if they believe from the evidence that these employees, or any of them failed to discharge such duty, and that as the direct result of such failure, the plaintiff was injured, they should find for the plaintiff, and unless they so believed they should find for the defendant. Instructions 2 and 3 are in these words:

"No. 2. It was the duty of the plaintiff in passing along Green street and approaching its intersection with the railroad track on Fourteenth street to exercise ordinary care for his own safety, and in the exercise of such care it was the duty of the plaintiff not to pass under or beyond the crossing gates, if they had been lowered before he reached said intersection; it was also plaintiff's duty, in the exercise of ordinary care for his own safety, to observe and heed such warnings, if any were given him, of the approach of said engine, and if you believe from the evidence that reasonably sufficient warnings were given of the approach of the engine to Green street and the plaintiff heard, or by the exercise of ordinary care, could have heard such warnings and failed to observe or heed them, his failure so to do was negligence on his part, or, if you shall believe from the evidence that

the gates were down and he went under them, as he approached the track, this was negligence and if such negligence on his part, if any there was, so contributed to bring about his injury that but for such negligence he would not have been injured, the law of the case is for the defendant and you should so find, although you may believe from the evidence that the defendant railway company's employees were negligent, as submitted to you in the first instruction, provided, however, if you shall further believe from the evidence that the plaintiff went upon the track upon which the engine was backing, or so near the said track as to be in peril from the approach of the engine, and his presence at such place and his peril were seen, or, by the exercise of ordinary care could have been seen by the engineer or brakeman on the engine in time for them, by the exercise of ordinary care, on their part, to have avoided colliding with him and injuring him, and they negligently failed so to do, the law is for the plaintiff, and you should so find.

"No. 3. I further instruct you, gentlemen, that those in charge of defendant's engine were under no duty to stop or check it unless the conduct of the plaintiff, when they saw or by the exercise of ordinary care could have seen him, was such as to lead an ordinarily prudent person to believe that he did not know of the approach of the engine and intended to go or to remain upon the track, but it was their duty to make an effort to stop the engine when they saw, or, by the exercise of ordinary care, could have seen that fact, if you believe it to be a fact from the evidence in this case."

It is insisted that instruction 2 gives undue prominence to certain facts. We do not see that the objection is well taken. Johnson v. Westerfield, 143 Ky., 10; L. & N. R. R. v. King, 131 Ky., 347. If reasonably sufficient warnings of the approach of the engine to Green street were given and the plaintiff by the exercise of ordinary care could have heard such warnings, and heeded them, his failure to do so was negligence; for ordinary care was required of him in approaching the railroad track. The purpose of having gates is to keep people from getting on the track when trains are passing. The gates being down were warning of the danger and if he went under the gates and thus got on the track, he went upon it with notice of the danger, and took the risk, unless his peril was discovered or by the exercise of ordinary care could have been discovered by the engineer or

brakeman in time for them by the exercise of ordinary care to have avoided injuring him. It is complained that in this part of the instruction the court erred in not qualifying it by the words: "If said engine had been under reasonable control." But the instruction followed the rule which we have laid down repeatedly. In Hummer's Exor. v. L. & N. R. R. Co., 128 Ky., 486, where we had under consideration a similar instruction, we said:

"The second instruction has often been approved by this court. The rule in this State is that contributory negligence bars a recovery unless, notwithstanding the negligence of the person injured, and after his peril is perceived, or might by ordinary care be perceived, in cases like this, the defendant's servants could by ordinary care avoid injury to him. The traveler who by his own negligence puts himself in peril on a railroad track can not recover, unless the danger to him may be avoided by proper care on the part of the railroad after it has notice, actual or constructive, of the danger in which his negligence has placed him. If the train was by negligence running too fast and the deceased was by negligence on the track, the injury would be due to the concurrent negligence of both the parties, and in such a case he cannot recover for the negligence of the railroad company, because but for his own negligence, he would not have been hurt; and where both parties have been negligent the law will not measure comparisons between them, and make the defendant responsible on the ground that its negligence was greater than his. It is said that the instruction should have been that the plaintiff could recover, although the intestate was negligent and but for his negligence would not have been injured, if those in charge of the train, after they saw his danger could have averted the injury to him by ordinary care if the train had been running at a proper rate of speed. This would be to lay down the rule of comparative negligence, and to hold that, although the intestate was negligent, there could be a recovery if the negligence of the defendant, and not his negligence, was the proximate cause of the injury. The rule has been so declared in some jurisdictions; but it has never been followed in this State. The proper speed of the train may be taken into consideration by the jury with the other facts shown by the evidence in determining whether the traveler used ordinary care in going upon the track as he did; and it is a question for them on all the evidence whether there

was negligence on the part of the defendant, or negligence on his part but for which the injury would not have occurred."

Again in Smith v. Cincinnati, Etc., R. R. Co., 146 Ky., 568, after setting out the facts showing that the train was running at a high rate of speed, we said:

"We, therefore, conclude that the appellee was negligent in running its trains at a speed of from forty to forty-five miles an hour. But this conclusion is not decisive of the case, for the rule is that where the railroad company is guilty of negligence in running its trains too fast, and the party injured or killed is himself negligent in going upon the track in front of the approaching train, the injury is the result of the concurrent negligence of both parties, and there can be no recovery for the negligence of the railroad company because but for the negligence of the party injured, he would not have been injured."

(To same effect see Paducah & Memphis R. R. Co. v. Hoehl, 12 Bush, 41; Cincinnati, Etc., R. R. Co. v. Yocum, 137 Ky., 123; Cincinnati, Etc., R. R. Co. v. Chavasse, 122 S. W., 171; L. & N. R. R. Co. v. McNary's Admr., 128 Ky., 408.)

Where the plaintiff comes on a street immediately in front of the train, and an instruction is given exonerating the defendant from liability, if the collision was an accident unavoidable by ordinary care, such a qualification may properly be added. The idea may be properly embraced in an instruction defining the duties of the defendant where the facts warrant it; but it has no place in an instruction on contributory negligence. The speed of the train may be such as to show negligence on the part of the defendant, and to make it liable for the plaintiff's injury if he exercised proper care, or his injury might have been avoided by ordinary care after his peril was, or by ordinary care should have been, discovered; but though the defendant was negligent, he cannot recover for the consequences of his own neglect, when his peril was not and by ordinary care could not be discovered in time to avert by ordinary care the injury to him.

Complaint is also made of the third instruction; but it embodies a principle which we have often announced (Thompson v. I. C. R. R. Co., 154 Ky., 820); and in no view of the law could it have been prejudicial to the plaintiff; for the reason that under all the evidence he

was not seen until the engine was very close to him, and the brakeman upon seeing him immediately signaled the engineer to stop. He was standing watching the other train going by with his face turned in that direction.

The jury were warranted in concluding from all the evidence that the plaintiff went under the gates when they were down and went out in the street supposing perhaps that the gates had only been lowered for the freight train, but in doing this he was in error, and the defendant should not be made to answer for his imprudence.

For the reasons indicated, the circuit court did not err in setting aside the first verdict, and granting a new trial.

Judgment affirmed.