## Louisville & Nashville Railroad Company, and Wasioto & Black Mountain Railroad Company v. Davis.

(Decided February 5, 1915.)

### Appeal from Bell Circuit Court.

1. Railroads—Trespassers Upon Tracks.—One is not licensed to travel longitudinally upon a railroad track, because the public road nearby has been obstructed, either by the railroad company, or some other person, and is thereby made inconvenient to travel. The employees of the railroad company are not required to anticipate the presence of persons upon the track of the railroad, except at public crossings, and in populous communities, like cities and villages.

2. Railroads—Trespassers Upon Tracks—Lookout Duty.—The employees of the railroad company do not owe a trespasser any lookout duty, and only owe him the humane duty of using ordinary care to prevent doing him injury, after they shall have discovered his peril.

BENJAMIN D. WARFIELD and W.M. LOW, for appellants.

N. J. WELLER for appellee.

Opinion of the Court by Judge Hurt—Reversing.

The appellee, Jesse Davis, sued the appellants, Louisville & Nashville Railroad Company, and the Wasioto & Black Mountain Railroad Company, in the Bell Circuit Court, complaining that one of the trains operated by the last named appellant, by the gross negligence and carelessness of its servants, had been run against him while he was walking on the track of the Wasioto & Black Mountain Railroad Company, on the 13th day of December, 1911, cutting and bruising his head, back and legs, and causing him great suffering and permanent impairment of ability to earn money, and asking a judg-

ment against the two railroads for the sum of $10,000.00 in damages. The basis for his suit as developed by his petition was, that a county road extended from Clear Creek, on the south side of Cumberland River, and up said river to the mouth of Patterson's Branch, and from thence on to Cannons Creek, and that two or three years before his injury the defendant railroads, in constructing the Wasioto & Black Mountain Railroad, had located the road bed of that railroad from the mouth of Patterson's Branch down to its intersection with the main line of the Louisville & Nashville Railroad, immediately in the bed of the county road, and had utterly destroyed that road and rendered it impassible, and that thereafter, and up to the time of the injury, the public in traveling from the mouth of Patterson's Branch down to the place where the two railroads intersect, had used the tracks of the Wasioto & Black Mountain Railroad as a public thoroughfare, because they had no other road upon which they could travel between said points on account of the destruction of the county road, and that he, in going from the mouth of Patterson's Branch to Mill Rice, a point on the right of way of the Louisville & Nashville Railroad Company, and near the intersection of the two roads, while walking on the track of the railroad, early in the morning, and while he was using ordinary care for his own safety, the employes of the defendants negligently and carelessly ran their train over him, causing the injury complained of. He insists that under the facts stated, that he was traveling at a point where he had a right to be, and that the railroad company owed him a lookout duty, which they did not perform.

The railroad companies filed a joint answer, in which they traversed all of the allegations of the petition and also, in addition to that, made a plea of contributory negligence on the part of the appellee, which he by reply denied.

Upon these issues the case was tried, and at the close of the evidence for the plaintiff the appellants asked the court to instruct the jury to find a verdict for them, and this motion having been overruled by the court, they complain. The trial resulted in a verdict and judgment against the appellants for the sum of $7,000.00. The appellants filed grounds and made a motion to set aside the verdict and judgment and to

grant them a new trial, which motion the court below
having overruled, they appeal to this court.

In addition to the refusal of the court to give the
jury a peremptory instruction to find for them, they
also complain that the court failed to instruct the jury
properly in the giving of instructions number one, two,
and three, and to which they objected at the time, and
also complain that the verdict of the jury was excessive.

In order to determine whether the court below was
in error because of its refusal to give the peremptory
instruction asked for, it will be necessary to make a
statement of the facts which the evidence for the ap-
pellee tends to prove, and to see whether or not, under
those facts, he was entitled to have his case submitted
to the jury.

It seems from the evidence that the main line of the
Louisville & Nashville Railroad Company passing
through Pineville and on to Middlesboro crosses the
Cumberland River at Wasioto, and at that point it ex-
tends up the Cumberland River and near to it to the
mouth of Patterson's Branch, at which point it turns
and goes up Patterson's Branch and on to Middlesboro.
The Louisville & Nashville Railroad Company acquired
its right of way from where it crosses the Cumberland
River to the mouth of Patterson's Branch in 1888 or
1889. The Wasioto & Black Mountain Railroad Com-
pany intersects with the Louisville & Nashville Railroad
on the south side of the Cumberland River, near Wasi-
oto, and from thence it proceeds up the Cumberland
River, and between the tracks of the Louisville & Nash-
ville Railroad Company and the Cumberland River, to
the mouth of Patterson's Branch, at which point it
quits the neighborhood of the Louisville & Nashville
Railroad track and proceeds up the Cumberland River
to Harlan county.

It seems that for a great many years last passed,
and as far back as forty years, there had been a pass-
way, which amounted to not much more than a mere
trail, which extended from the mouth of Clear Creek,
which is west of the intersection of the two railroads,
and ran south and east along the Cumberland River,
crossing the Louisville & Nashville Railroad at a point
near the intersection of the two railroads, and from
thence on up the Cumberland River to the mouth of Pat-
terson's Branch, between the Louisville & Nashville

Railroad tracks and the Cumberland River.   This road, from where it crossed the Louisville & Nashville Railroad tracks, and for a distance of three hundred or four hundred yards, ran between the tracks of the Wasioto & Black Mountain Railroad and the Cumberland River, and at the end of said three or four hundred yards, and on to the mouth of Patterson's Branch, the road contended for had been taken up by the grade and tracks of the Wasioto & Black Mountain Railroad, and the railroad had been substantially built in this road bed.   The evidence further shows that, between the place where this dirt road comes in contact with the track and grade of the Wasioto & Black Mountain Railroad, and on down the river to where it crossed the track of the Louisville & Nashville Railroad, its bed was twenty or thirty feet from the tracks of the Wasioto & Black Mountain Railroad.   On the morning upon which Davis suffered his injury he was living at the mouth of Yellow Creek, near the Wasioto & Black Mountain Railroad, and about two miles east of Patterson's Branch; that he left home early in the morning, and as quick as he got to the railroad track he got upon it and walked on down, going past the mouth of Patterson's Branch, and on down to a point which some of the evidence shows was sixty yards, and some of it shows one hundred and sixty yards, beyond the place where the so-called county road had been taken up by the building of the railroads, when he was suddenly struck by a train coming behind him from the south, which knocked him off of the track with such force that he was rendered unconscious; and that he had not been able to perform manual labor since that time.   His statement is that he did not hear the train coming behind him; that he heard no signals of any kind, and was not aware of its approach until it struck him; that he had not looked back or looked out for any trains on the road.   Some of his witnesses who lived nearby stated that just about the time it is said he was struck by the engine of the train, that they heard one or more sharp whistles, which the engineer gives as warning to any one who is suddenly discovered in a perilous situation.

The appellee below offered and read to the jury an order of the Bell County Court, made on the 11th day of August, 1903, by which it ordered a public road to be established, "beginning at the mouth of Big Clear

Creek, on the south side of the railroad, and about forty yards from said road, at the present county road, thence at an angle from the railroad, and up the hill for a distance of forty yards; thence running nearly south and parallel to the right of way of the Louisville & Nashville Railroad Company above or south of said right of way, to a corner of H. P. Browning's inclosure around his house, crossing the said Louisville & Nashville Railroad Company at right angles; thence up the river parallel with and adjoining the north right of way line of the said railroad, to Patterson's Branch, a short distance above its mouth, so as to intersect with the public road leading up said branch and no further.'' The proof further shows that after this order was made in the Bell County Court surveyors or overseers were appointed for this road established by this order, and for a number of years thereafter they did some kind of work upon this road. The Louisville & Nashville Railroad Company was made a party to this proceeding in the county court, which resulted in the judgment of the county court establishing the road as above stated. It does not, however, appear that any road was ever opened along the places designated in the judgment, but that the public continued to travel the old trail, which had existed there for many years, and the work, if any, that was done by the overseers and those assisting them was done upon this old trail. Whether any part or what part of this old dirt road is upon the right of way of the Louisville & Nashville Railroad does not appear from the proof, which is hardly intelligible upon that point, as it appears that on the trial below diagrams were used by each of the parties in introducing their evidence, and the witnesses testified in reference to these diagrams, but the parties have not seen fit to enlighten this court by having either of the diagrams included in the record. It is conceded that from the point of the intersection of the two railroads and on towards Patterson's Branch, from that point, that both of the railroad tracks are built upon the right of way owned by the Louisville & Nashville Railroad Company for a considerable distance, and at the point where the appellee received his injury both railroads were upon the right of way of the Louisville & Nashville Railroad Company; but it is impossible to see from the evidence whether the dirt road opposite that point is upon the

right of way of the Louisville & Nashville Railroad or not. It seems that at the point where the dirt road intersects with the Wasioto & Black Mountain Railroad track, the railroad track is laid upon a fill, which the witnesses variously estimate to be from two to ten feet in height, and that this fill continues on down the river a considerable distance, and to the point where the appellee received his injury. It, however, appears from the evidence that persons on horseback or upon foot so, as to travel the dirt road, have been going down the embankment at the place where the dirt road leaves the road bed of the railroad, but that two weeks before the appellee received the injury the section hands upon the railroad had thrown mud and stones into the dirt road where it intersected with the railroad track, and that the mud and stones extended from twenty to thirty feet from the railroad track along the road toward the west.

It seems that the contention of the appellee that at the point of his injury that he was obliged to travel upon the railroad track, because it was built within the bed of the old county road, is not well taken, because at that point the railroad upon which he was walking when hit by the train was upon the original right of way owned by the Louisville & Nashville Railroad Company, and the road ordered to be opened and established by the order of the county court was not upon the right of way, but was on the north of it, and between it and the river.

As to whether or not there had been such use of the road as contended for by appellee by the public, and for such length of time, and under such conditions as to constitute it a public road, where any one had a right to travel, or as to what rights a person has to travel upon the tracks of a railroad where a public road has been, without authority, appropriated by the railroad, is unnecessary to be decided for a proper determination of this case, because at the time appellee received his injury he was then at a point upon the railroad track where it is conceded that no public road of any kind was ever located, and the road which appellee claims as a public highway was from twenty to thirty feet north of the railroad track upon which he was walking, and between the railroad track and the river. His contention that the dirt or county road, from the place

where it left the railroad track, and on down the river to and beyond his point of injury, had been filled by the section hands of the railroad with mud and stones to such an extent as to render it impassable, is not sustained by the proof, as the evidence shows that this mud only extended about twenty or thirty feet down the river from the point where the dirt road left the track of the railroad, and he was from sixty to one hundred and sixty yards down the river from said point. His other contention, that he could not get down from upon the fill, seems to be idle.

Whatever lookout duty the employes of a railroad company may be justly required to perform where the railroad tracks have been put in the streets of a city, town, or other populous community, we do not think that this rule should be extended so as to embrace persons who, with impunity, go upon the tracks of a railroad, and travel same longitudinally for their convenience or pleasure, because an adjacent highway has been obstructed, either by the railroad company or any one else, in an isolated and thinly populated community, such as the evidence shows the one where appellee's injury occurred to have been. Ample remedies have been provided by law for the county courts and for private persons to prevent, as well as for the removal of, unauthorized obstructions in public ways. To use the tracks of a railroad company as a thoroughfare for travel is in itself a dangerous and negligent act, and such acts, considering the great number of persons who suffer injuries from such carelessness, ought not to be encouraged.

As we gather from the evidence, the appellee had no right to be upon the railroad track, even under his own contention, at the place where he was injured, because directly between him and the river lay the alleged county road, and within twenty or thirty feet of him, and such had been the condition for the last sixty to one hundred and sixty yards of his travel. The contention of his counsel that, even if he had departed from the railroad track and proceeded along the alleged county road, that he would still have been upon the right of way of the railroad, and his status would have been unchanged, if he was a trespasser. However, if he had left the railroad tracks and proceeded along the dirt road, he would have been safe, and no injury would have occurred to

him. Having no right to be upon the railroad track at the time he was injured, he was a trespasser and must submit to the rules of law governing the rights of trespassers. As a trespasser the employes of the railroad company would not owe to him any lookout duty, and only owed to him the humane duty of using ordinary care to save him from injury, if they discovered the peril in which he had voluntarily placed himself. If the employes of the railroad company did not discover him at all, or discovered him too late to save him from injury, by the exercise of ordinary care upon their part, he has no cause for complaint.

In the case of C. & O. Ry. Co. v. See's Administrator, 79 S. W., 252, it is said: "The well settled rule in this State is that those in charge of a train owe no duty to a trespasser, except when his presence is discovered upon the track, to use reasonable care to avoid injuring him. This rule has been so repeatedly announced by this court that it would be labor lost to cite cases in its support. There is no duty reposing upon those in charge of a train to sound whistles, or ring bells, or to carry headlights to give warning to trespassers. They do not have to anticipate their presence upon the track."

The counsel for appellee, however, contends that the fact that several persons in the community where the injury occurred were in the habit of traveling upon this railroad track for their convenience in going to and fro in that community, and that the railroad company had acquiesced in that use of it, and for that reason a lookout duty was imposed upon the men operating the train, such as they are required to perform when passing a public crossing, or in a populous community of a city or town. There is, however, no evidence tending to show that the railroad company in any wise acquiesced in this use of its tracks, or, even if the company had had knowledge of this use of its tracks, it would have conferred no additional right upon the appellee in this case, for simple acquiescence on the part of a railroad company in the use of its track by the public as a passway, does not confer authority, or right, nor amount to a license to so use it. Brown's Administrator v. L. & N. R. R. Co., 97 Ky., 228.

The same doctrine was announced by this court in the case of Adkins' Admr. v. Big Sandy & Cumberland Railroad Company, et al., 147 Ky., 30.

There being no evidence conducing to show that the persons operating the train which struck appellee discovered his peril at all before he was struck by the train, or discovered it in time to have averted the injury to him, the court below ought to have sustained appellant's motion to direct the jury to find a verdict for them.

While the instructions given by the court were erroneous in failing to fix a measure of damages, and assuming that certain things existed which were issues in the pleadings and upon the proof, but having arrived at the conclusion that appellee had no case to submit to the jury, it is unnecessary to discuss the instructions.

The judgment appealed from is, therefore, ordered to be reversed, and the case remanded to the court below, with instructions to proceed in conformity with this opinion.