## Moran's Administrator, et al. v. Chesapeake & Ohio Railway Company, et al.

(Decided June 19, 1917.)

### Appeal from Greenup Circuit Court.

1. Railroads—Operation of Trains—Traveler—Care Required.—A person using the tracks of a railroad company in an incorporated town at a place where the presence of persons on the track should be anticipated by the company was not a trespasser, but a licensee, to whom the company owed the duty of keeping a lookout, of running its train at a reasonable rate of speed, of giving timely warning of its approach and of using ordinary care to avoid injuring him. On the other hand, such person was under the duty to use ordinary care to learn of the approach of the train and to keep out of its way.

2. Railroads—Accident on Tracks—Care Required of Persons Entering Tracks—Drunkenness.—Though drunkenness is not contributory negligence as a matter of law, yet a drunken person must exercise for his own safety the same degree of care that an ordinarily prudent person, if sober, would exercise under like or similar circumstances.

3. Railroads—Injuries to Persons on Tracks—Intoxication of Traveler—Contributory Negligence.—The failure of a traveler along railroad tracks to heed signals of the approach of the train, which were sufficient to apprise an ordinarily prudent person, if sober, of its approach, is contributory negligence as a matter of law.

4. Railroads—Injuries to Persons on Tracks—Contributory Negligence—Effect When Lookout Duty is Owing.—Where a railroad company owes to a traveler on its tracks a lookout duty, the contributory negligence of the traveler will not defeat a recovery, where, notwithstanding such contributory negligence, the railroad company failed to use ordinary care to avoid injuring him after his peril was discovered, or could have been discovered by the exercise of ordinary care.

5.    Railroads—Injuries to Persons on Tracks—Negligence—Evidence
      —Sufficiency.—In an action against a railroad company for the
      death of a person struck by one of its trains, evidence that the
      company failed to use ordinary care to avoid injuring the de-
      cedent after his peril was discovered, or could have been dis-
      covered by the exercise of ordinary care, examined, and held
      to make a question for the jury.

J. B. BENNETT and A. D. COLE for appellants.

WORTHINGTON, COCHRAN & BROWNING and P. K. MALIN
for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY,
COMMISSIONER—Reversing.

While walking along the track of the Chesapeake &
Ohio Railway Company in the town of Greenup, J. R.
Moran was struck and killed by one of the company's
trains.  His administrator brought this suit against the
company and its engineer and fireman to recover dam-
ages for the decedent's death.  At the conclusion of
plaintiff's testimony the trial court directed a verdict in
favor of the defendants.  Judgment was rendered ac-
cordingly, and plaintiff appeals.

The facts are as follows:  The company's railway
runs in an easterly and westerly direction through the in-
corporated town of Greenup.  The westerly limit of
Greenup is the Little Sandy river, over which the com-
pany maintains a trestle.  From this point to the place
where decedent was struck and killed is about 2,160 feet.
Between these two points the company's tracks are
crossed by three streets, Washington, Harrison and Lau-
rel.  Decedent was killed about 600 feet east of the com-
pany's depot and 410 feet east of Wilson's lower mill.
The distance from the lower mill to the place of the
accident is about 1,010 feet.  When the train which
struck decedent was at the trestle it sounded an ordinary
warning signal.  It also sounded the signal for Warnock
street.  As the train was passing the Wilson mill, which
is located immediately west of Harrison street, the engi-
neer repeatedly sounded the alarm whistle, and, after a
slight intermission, continued to give the danger signals
until the decedent was struck.  When the alarm blasts
were first given the train was about 1,000 feet distant.
The alarm blasts were heard by everyone in the vicinity
and were sufficiently loud to apprise a person of ordinary
prudence of the approach of the train.  The train was a

manifest freight, consisting of an engine and sixty loads, and was running at from twenty to thirty miles an hour. The engineer says that the train could not have been stopped within less than 1,320 feet, if running at thirty miles an hour, but if running at twenty miles an hour it could have been stopped in one-third of that distance, or if running at fifteen miles an hour it could have been stopped in from 700 to 900 feet. Bert Burns, who had about five years' experience as a brakeman and extra conductor on the railroad in question, gave it as his opinion that the train in question, with the appliances in use when the accident occurred, if running at from twenty to thirty miles an hour, could have been stopped in 400 or 500 feet; if running at from fifteen to twenty miles an hour it could have been stopped in from 8 to 10 car lengths, and if running at twelve or fifteen miles an hour it could have been stopped in 8 car lengths, or 250 feet. However, he had had but little experience with manifest freight trains. Subsequently the testimony of this witness was withdrawn from the consideration of the jury. While the engineer had an unobstructed view of the track for a distance of about 2,000 feet, the evidence is not very clear as to the precise time when the decedent came upon the track. It is admitted that the decedent was intoxicated.

Greenup is an incorporated town, and it is conceded that the accident occurred at a place where the presence of persons on the track should have been anticipated by the company. That being true, decedent was not a trespasser, but a licensee, to whom the company owed the duty of keeping a lookout, of running the train at a reasonable rate of speed, of giving timely warning of its approach and of using ordinary care to avoid injuring him. On the other hand, the decedent himself was under the duty to use ordinary care to learn of the approach of the train and to keep out of its way.

While it is true that drunkenness is not contributory negligence as a matter of law, yet it is equally well settled that a drunken person must exercise for his own safety the same degree of care that an ordinarily prudent person, if sober, would exercise under like or similar circumstances. C., N. O. & T. P. Ry. Co. v. Reed, 154 Ky. 380, 157 S. W. 721. As before stated, the alarm blasts given by the engineer were so loud and repeated that they were heard by everyone in the vicinity There can be no doubt, therefore, that they were sufficient to apprise an ordinarily prudent and sober person of the

approach of the train in time to have enabled him to get out of the way of the train by the exercise of ordinary care. We, therefore, conclude that decedent, in failing to heed the warning and get off the track, was guilty of contributory negligence as a matter of law. But it is the rule in cases like this that contributory negligence does not bar a recovery, where, notwithstanding such negligence on the part of the person injured or killed, the railroad company failed to use ordinary care to avoid injuring him after his peril was discovered, or might have been discovered by the exercise of ordinary care. Hummer's Ex'r v. L. & N. R. Co., 128 Ky. 486, 108 S. W. 885; Smith's Adm'r v. C., N. O. & T. P. R. Co., 146 Ky. 568, 142 S. W. 1047; Bauer v. I. C. R. Co., 156 Ky. 183, 160 S. W. 933. It remains to determine, therefore, whether the evidence on this question was sufficient to take the case to the jury. In our opinion, the evidence of Bert Burns, as to the time in which the train in question could have been stopped, was improperly excluded. While it is true that he had had but little, if any, experience with manifest freight trains, he had had five years' experience as brakeman and extra conductor on ordinary freight trains, and this was sufficient to qualify him to testify on the subject. C. & O. R. Co. v. Lang's Adm'x, 135 Ky. 76, 121 S. W. 993. Though it may be that his testimony was not very persuasive, it was admissible for what it was worth and its weight was for the jury. Accepting his statement and the other evidence as true, as we must do for the purpose of determining whether a peremptory should have gone, the facts presented are as follows: Though the exact time when decedent went on the track does not appear, the giving of the alarm blasts when the engine was 1,000 feet distant shows that decedent was then on the track and his peril discovered. At that time decedent, who was intoxicated, was staggering up the track with his back to the approaching train. He paid no attention to the signals, but continued to stagger up the track. The precise speed of the train is not shown. According to Burns, it could have been stopped within 400 or 500 feet, if running at from twenty to thirty miles an hour. As a matter of fact, it was not stopped until it reached a point 590 feet beyond the place of the accident. While it is true that an engineer, who keeps a lookout and gives warning of the approach of the train, may assume that a person on the track will heed the warnings and keep out of the way of the train, and need not stop the train until it becomes reasonably

apparent that such person is unconscious of the danger—Smith's Adm'r v. C., N. O. & T. P. R. Co., *supra*—yet we conclude that Burns' evidence, though it might not be sufficient to sustain a verdict, was sufficient, in connection with the fact that decedent was staggering up the track and paying no attention to the signals, to take the case to the jury, on the question whether or not the company used ordinary care to avoid injuring the decedent after his peril was discovered, or could have been discovered by the exercise of ordinary care.

Judgment reversed and cause remanded for a new tiral consistent with this opinion.