## Louisville & Nashville Railroad Company v. Horton.

(Decided March 16, 1920.)

### Appeal from Lee Circuit Court.

1. Negligence—Actionable Negligence—Personal Injuries.—Where in an action for damages for personal injuries on account of negligence, the plaintiff specifies the particular acts, which caused his injuries, they must be acts, which, on the part of the defendant, are actionable negligence.

2. Railroads—Operation—Signals—Negligence—Lookout Duty.—It is not negligence on the part of those operating a railroad train to fail to give signals of its approach, or to moderate the speed of the train, or to maintain a lookout, for one who is making use of the tracks of the railroad, as a road upon which to travel, longitudinally, at a place, in the country, outside of a city, town or populous community, where such numbers of people use the tracks, as to impose the duty of anticipating persons upon the track at such places.

3. Railroads—Trespassers—Licensees.—The mere use of a railroad track, although with the knowledge and acquiescence of the employees of the railroad company, does not convert the users from trespassers into licensees, unless at a public crossing or the like, or unless in a city, town or populous community, where such numbers of people use the track as to put the duty upon the employees of the railroad, of anticipating the presence of persons.

4. Railroads—Trespassers—Negligence.—If a trespasser upon a railroad track gets himself into a place of danger of being killed or

seriously injured by a train, and the engineer of the train discovers his peril, in time, by the exercise of ordinary care, in the use of the means, at hand, and consistent with the safety of the persons on the train, to avoid injury to the trespasser, it is negligence in the engineer to fail to do so.

5.  Railroads—Obstructions—Use of Tracks.—The fact, that a railroad company obstructs a highway near its track, with debris, does not authorize the use of its tracks as a place for travel.

6.  Damages—Special Damages—Pleading.—Special damages, arising from a personal injury, such as physicians, surgeons, hospital and medical bills, must be specially pleaded, and a failure to allege the amount of such bills, is the same as no pleading upon the subject at all.

7.  Railroads—Action for Personal Injuries—Witnesses.—A plaintiff suing a railroad company for an injury to him is not a competent witness to testify in his own behalf, to verbal statements of the engineer of the train. made at the time of the injury, and competent evidence as a part of the res gestae, if the engineer is dead, at the time, the testimony is offered to be given.

SAM HURST, G. W. GOURLEY and BENJAMIN D. WARFIELD for appellant.

J. M. McDANIEL and HOBSON & HOBSON for appellee.

OPINION OF THE COURT BY JUDGE HURT—Reversing.

The appellee, C. B. Horton, at the time of his injury, resided about one and one-half miles from Athol, which is a station upon the appellant's railroad, and, near thereto, were four or five dwelling houses. He was struck by the engine of a freight train of the appellant, about one hundred feet from an "underground crossing" of the public highway over the railroad tracks, and the point, at which he was injured, was about midway between the "underground crossing" and the station. The collision occurred between 9:00 o'clock and 10:00 o'clock, p. m., and he suffered injuries to recover damages, for which, he sued the appellant and recovered a judgment for the sum, of $5,000.00 to reverse which this appeal is prosecuted.

The facts, relating to the case as detailed by the appellee, are as follows: he was returning to his home from the state of Ohio, and about four o'clock, p. m., he drank "two drinks" of whiskey, and slept on the train, from Winchester to Athol, where he was awakened by some one, and left the train, forgetting his suit case, in which he had a quantity of whiskey. After arriving at Athol,

he remained there about forty-five minutes, and the night being very dark, he made an effort to secure a light, but, failing in this, he left there and started along the railroad track in the direction of his home, and continued, until he passed over the point where the public highway crosses the railroad track. This crossing is designated, in the evidence, as the "underground crossing." At this point, the appellee concluded to return to the station, for the purpose, as he says, of getting a horse upon which to ride to his home. About this point, he claims to have sprained his ankle, which made necessary the removal of his shoe from his foot, and the ankle became so swollen, that he could not restore the shoe to his foot. While walking along upon the embankment of the railroad in the direction of the station, but not upon the track, he heard the whistling signal, given for the crossing, or the station, by a freight train, which was approaching the station from the direction from which he was traveling, and heard the noises, which accompany a moving freight train. When the train had approached within about three hundred yards of him, he saw the headlight of the engine and, although, he was then at a considerable distance from the station, he concluded to pass over the track in front of the approaching train, as he says, for the purpose of going to the station. There was no one then at the station, but he says, the door of the waiting room was open. In attempting to cross over the track, his foot slipped, and he fell between the rails, and was unable to remove himself entirely from the track, before the engine of the train struck him; that he exerted himself with all of his might to get off of the track, and got himself clear of it, except one leg, which was broken, and one hand injured. He further testified, that within two minutes after he suffered the injuries, the engineer of the train came to him and inquired if he was hurt, and when he announced the affirmative, the engineer said, "you are killed," and then said to him, that he saw him when he fell upon the track, and had seen him for the distance of eight or nine rail lengths before he fell; that he saw the white shirt, which appellee was wearing, but, appellee says, that the engineer was mistaken about seeing his shirt, as his coat was buttoned, but that it was his white hat, which the engineer saw. Appellee, also, deposed, that he had the experience of a fireman for a locomotive engine for three years, and that the headlight of the engine

enabled an engineer to see along the track, at the point where he was injured, for at least one-half of a mile in front of the train, as the track was straight. He, also, deposed, that he saw the headlight of the approaching train before he attempted to cross the track. When asked where the engineer was at the time of the trial, the appellee, upon direct examination, stated, that the engineer was dead, but, upon cross-examination, being interrogated as to his statement with reference to the engineer being dead, he said, "that is what I understand, I don't know," and further, that he did not know the name of the engineer. The conductor and fireman of the train being called as witnesses by the appellee, testified, that the train consisted of about forty cars, each of about forty feet in length; that it was moving from fifteen to twenty miles per hour, and that upon the track, where appellee was injured, the train could be brought to a standstill within from three to four car lengths from the time of the application of the brakes "in emergency;" and that when the train upon this occasion was stopped, that the body of appellee was lying beside the third car from the engine, and about one-third of the length of that car from its end, which was nearest the engine. The fireman, further deposed, that he was looking out upon the track from his side of the engine, previous to the stopping of the train, and did not see appellee upon the track, which, at that point, was describing a curve, and that he was engaged in ringing the bell as the train approached the point of collision, and that when the train stopped, he inquired of the engineer "what was the matter?" and the engineer replied, "My God, I hit a man back there. I did not see him, until I got right on him." The fireman, further, stated, that he was present during all the time, that the engineer was where the plaintiff was, and that the engineer did not say to the plaintiff, that he saw him fall upon the track, when the train was eight or nine rail lengths away, and did not make the statement, which plaintiff deposed, that he made. The conductor testified, that the engineer made the same statement in regard to seeing the appellee, as the fireman stated, was made to him, and, further, that the engineer said, that immediately upon seeing what he thought was a white shirt of a man sitting upon the right side of the track, that he applied the brakes "in emergency." There is no evidence to the effect, that the engineer saw the plaintiff upon the track, except the above declaration of the engineer, as made by

the plaintiff, the conductor and the fireman, respectively. The plaintiff in another place in his testimony, deposed, that the place, where he was struck by the train, was about one hundred feet from the "underground crossing," and about one hundred yards from the station at Athol.

The appellant complains of the rulings of the ·trial court, and insists, that it was error when the trial court overruled its motion to strike out certain matter from the petition, and overruled its demurrer to the petition, and erred to its prejudice in the admission of incompetent testimony upon the trial, and further erred to its, prejudice in giving and refusing instructions. to the jury.

(a) The appellee, by his petition, first averred, that the cause of his injuries was the negligence, generally, of the appellant, in running its train against him. This was a general charge of negligence and was sufficient to have enabled him to prove upon the trial any specific act of negligence of which appellant may have been guilty, and to have recovered for any negligence, which he could prove as the proximate cause of his injuries, and relative to the operation of its train. This general averment of negligence was, however, followed by allegations of specific acts which constituted the negligence from which the injuries were suffered. The specific acts of negligence alleged, as the cause of his injuries, were (1) the operation of the train at a negligent rate of speed, (2), the failure to give a signal, required by law, of the approach of the train to a public crossing, and (3), that the servants, operating the train, discovered him in a position of peril, and negligently failed to use ordinary care to avoid injury to him. In an endeavor to show, that the appellant owed the appellee a duty of operating its train at a moderate rate of speed, at the place of his injury, and to give a warning of its approach, the appellee, after having averred, that he was injured by a collision of the train with him "within a few steps of the crossing thereat," then averred, that at the place where he was injured, he and the other members of the community, relied upon the statutory signal for the crossing, to enable them to know of the approach of a train, and that the appellant knew that great numbers of people, in the community, used the railroad track, at that point as a passway, while traveling on horseback and on foot, and not only acquiesced therein, but, had compelled them to so make use of the

track by having rendered the nearby highway impassable from having thrown dirt and various debris, into it. The rule applying to pleading the causes of injuries from negligence, and to the admission of evidence in such actions is too well known to require reiteration here, and that is, if the negligence is alleged in general terms, any specific act of negligence may be proven and relied upon for recovery, but, if the plaintiff specifically sets out the acts, which constitute the negligence of which he complains, as the causes of his injuries, he will be restricted in his evidence to the proof of the specific acts averred and relied upon, and further, if the petition specifies the special acts of negligence, the facts, averred, must be such as will constitute a cause of action for the doing or failure to do the specific acts alleged. Lexington Ry. Co. v. Britton, 130 Ky. 683; W. A. Gaines & Co. v. Johnson, 32 K. L. R. 58; Palmer's Admr. v. Empire Coal Co., 162 Ky. 130; Sandy River Cannel Coal Co. v. Candill, 22 K. L. R. 1175; L. & N. R. R. Co. v. Victory, 104 Ky. 509. The appellant moved the court to strike from the petition the averments, relating to the speed of the train and the failure to give a signal of warning. This motion was overruled. It then demurred generally to the petition, and the demurrer was overruled. It was not error to overrule the motion to strike, as such a motion can not be made to do the duty of a demurrer. In an attempt to allege a cause of action, when all the facts relative to it are stated, they fail to constitute a cause of action, or a failure to allege a cause of action by a defective averment of the facts, is not a subject of a motion to strike, but, when it is desired to call the insufficiency of the averments to the attention of the court, it should be done by a demurrer. Hardy v. Russell, 181 Ky. 287. As above stated, when a plaintiff specifies the particular acts of negligence, which caused his injuries, they must necessarily be the negligence referred to in any charge of negligence, which he has averred in general terms, and hence, the particular acts, which he specifies, must be such acts as constitute actionable negligence. Otherwise he has not stated a cause of action. The petition, in the instant case, affirmatively shows, that the plaintiff, at the time of his injuries, was not upon the tracks of a railroad, at a public crossing, nor at a private crossing, where he had a right to be, and hence, does not bring himself within the principles announced in Cahill v. Cincinnati, etc., Ry., 92 Ky. 345,

wherein it was held, that one in the use of a private crossing, which he had the right to use, could rely upon the customary signals given by the trains, of their approach to a nearby public crossing, and under such circumstances, it was negligence upon the part of the railroad company to fail to give the customary signals at the public crossing. In the country, without the limits of cities, and towns, and populous communities, it is only where the crossing is a public one, that reckless speed or a failure to give signals of warning amounts to negligence. L. & N. R. Co. v. Survant, 96 Ky. 197; Davie v. C. & O. Ry. Co., 116 Ky. 154; Johnson v. L. & N. R. Co., 91 Ky. 651; Hucker v. K. C. R. Co., 7 K. L. R. 761. Such acts are not negligence at a private crossing, and the appellee being upon the track of a railroad, at a place, other than a public crossing, or at a private one, to the use of which he had a right, and which was near enough to a public one to enable him to hear the customary signal and to rely thereon, in his use of a private crossing, but, being a mere trespasser and using the track by walking longitudinally along it as though a passway, could not complain of the speed of the train, nor of its failure to warn him by a signal. The facts upon which he attempts to base his right to use the railroad track as a thoroughfare for travel, do not make him a licensee. It is true, he alleges, that great numbers of people with the knowledge and acquiescence of the servants of the railroad had used the track, as a passway for travel at the place of his injuries, for a considerable time, make him a licensee thereon, or entitle him to signals of the approach of the trains, or to a moderation of their speed. It has often been held, that the mere use of a railroad track by the public will not convert the users from trespassers into licensees, except when the use is at a place, where the public have a right to be and to travel, as at a public crossing, or in a city, town or populous community where such large numbers of people use the tracks, as to put upon the servants of a railroad, the duty of anticipating the presence of persons, upon the track. Starett v. C. & O. Ry. Co., 110 S. W. 282; E. K. R. Co. v. Powell, 17 K. L. R. 1051; C. & O. Ry. Co. v. Nipp, 125 Ky. 49; Brown v. L. & N. R. Co., 97 Ky. 228; Adkins v. Big Sandy, etc., R. Co., 147 Ky. 30; L. & N. R. Co. v. Davis, 162 Ky. 579. Neither does the railroad company, by casting dirt and debris into the nearby highway, and thus rendering it unfit for travel, confer the right to use its tracks

for that purpose, nor can it be considered an invitation to so use the track. W. & B. M. R. Co. v. Davis, 162 Ky. 572. The remaining specific act of negligence alleged, was that "his injuries were also caused and contributed to by and through the failure of the defendant, which discovered his peril and after discovering his peril in failing to use ordinary care to keep from injuring him." The doctrine is well settled, in this state, that although a person is a mere trespasser, upon the track of a railroad, and is guilty of negligence in going or being thereon, and although the servants of the railroad are under no duty of keeping a lookout for him, nor of giving him any warning of the approach of a train, nor of moderating its speed, nor of having it under control, nor is the failure to do any of these things, negligence as to him, yet, if his negligence has resulted in putting himself in a place of peril, of being killed or seriously injured by the train, and the engineer operating the train discovers the peril, in time, by the exercise of ordinary care in the use of the means, which he has at hand, consistent with the safety of the persons upon the train, to avoid injuring the trespasser, it is his duty to do so, and if he fails to exercise ordinary care to protect him from harm and he is injured thereby, the railroad company will be liable for the damages. If ordinary prudence requires the train to be stopped in order to shield the trespasser from death or harm, it is the duty of the engineer to stop the train, before coming in contact with the trespasser, if he can do so, by the exercise of ordinary care with the means he has to do so. L. & N. Ry. Co. v. Bank's Admr., 176 Ky. 259; L. & N. R. Co. v. Davie, 162 Ky. 578; L. & N. R. Co. v. Benke, 176 Ky. 263; W. & P. C. Ry. Co. v. Charles' Admr., 168 Ky. 42; Becker v. L. & N. Ry. Co., 22 K. L. R. 1893; L. & N. R. R. Co v. Bell, 32 K. L. R. 1893. Hence, to contitute negligence on the part of the engineer of a locomotive attached to a train, which injures a trespasser, it must not only be shown, that he discovered the peril of the trespasser, but, that he discovered it in time by the exercise of ordinary care, in the use of the means, he had at hand, consistent with the safety of the persons, upon the train, to avoid doing him an injury, and that he failed to do so. The allegations of the petition alleged only inferentially, that the plaintiff was in a place of peril, and do not aver, at all, that the engineer discovered his peril, in time, be-

fore striking him, by the exercise of ordinary care, to have avoided injury to him, or that he could have avoided injury to him by the utmost care, in the use of all the means, he had at hand. Taking the allegations most strongly against the pleader, it must be concluded, that the engineer did not discover the appellee's peril, in time, by the exercise of ordinary care, to prevent injury to him.

Hence, the petition failed to state a cause of action and the demurrer should have been sustained. Nor did the answer cure the want of a cause of action in the petition, and hence, the pleadings do not sustain the judgment.

(b) The evidence as to the use of the tracks as a passway by the public and the obstructions of the highway by the appellant, was not competent, and should have been excluded for the reasons above stated, instead of being admitted over the objection of the appellant.

(2) Special damages, like bills of physicians, hospital and medical bills, must be specially pleaded, in an action, for damages for personal injuries, and where the amount of such bills is left blank, in the petition, as in this case, it is the same as if no pleading existed upon the subject and hence, it was error to permit the appellee to make proof of such items of damages, over the appellant's objections. (3) The appellee was permitted, over objection, to testify to the statements, which he says, that the engineer made to him, in reference to the time of seeing appellee upon the track, and it is contended, that the admission of that testimony was prejudicial error, because the engineer was dead, at the time the testimony was given, and the evidence of appellee is relied upon, as showing that the engineer was then dead. The statement of the engineer was made, as appellee deposed, within two minutes after he was injured, and immediately upon the stopping of the train, hence, was a statement by one of the actors, at the same time, substantially, that the main fact under consideration took place and was so connected with it, as to illustrate its character and for that reason, was competent to be proven as a part of the *res gestae,* or the thing done. I. C. Ry. Co. v. Houchins, 31 K. L. R. 94; L. & N. R. Co. v. Foley, 94 Ky. 221; Early's Admr. v. L. H. & St. L. Ry. Co., 115 Ky. 13; Floyd v. P. R. & P. Co., 23 K. L. R. 1077; Ballard & Ballard v. Durr, 165 Ky. 623. The appellee, however, was not a competent witness, by whom to prove the statements of the engineer, if the latter was then dead, as the engineer was the agent of ap-

pellant, in the operation of the train, and appellee was not competent to testify for himself concerning any verbal statement of such agent, if the latter was then dead. C. N. O. & T. P. Ry. Co. v. Martin, 146 Ky. 260. Putting together however, all the statements made by appellee, in reference to the engineer being dead, and no other evidence was heard upon the subject, they do not prove such to be the fact, hence, the admission of the testimony was not error.

The first instruction given the jury, was not entirely consistent with the rights of appellant, as stated in this opinion, and in the event of another trial should be made to conform thereto, as well as the fourth instruction.

The judgment is therefore reversed and the cause remanded with directions to set aside the judgment, and the judgment overruling the general demurrer to the petition and to sustain the same, and for other proceedings not inconsistent with this opinion.