## Chesapeake & Ohio Railway Company v. Davis' Administrator.

(Decided June 4, 1929.)

BROWNING & REED and KIRK, KIRK & WELLS for appellant.

WHEELER & WHEELER for appellee.

Opinion of the Court by Judge Clay—Affirming.

This is an appeal from a judgment for $1,500 in favor of the administrator of C. C. Davis. All other errors are waived, and a reversal is asked only in the event the court is of the opinion that a peremptory instruction should have gone.

The decedent was struck and killed by one of appellant's engines. It is conceded for the purpose of the appeal that the decedent was a licensee to whom appellant owed the duty of giving warning of the engine's approach, operating it at a reasonable rate of speed, and keeping a proper lookout. It is also conceded that as to speed and warning the evidence is conflicting.

The accident occurred in Greentown, in Johnson county, a small settlement west of Paintsville. Paint creek separates Paintsville from Greentown, the former being on the east side of the creek and the latter on the west side. West of Greentown is Thealka, a small mining community, in which decedent resided with his father. The railroad tracks between Paintsville and Thealka run parallel with and along the bank of the Big Sandy river. The track next to the hillside is known as the east-bound track and is ordinarily used for east-bound trains. The track next to the river is the west-bound track, and is ordinarily used for west-bound trains. The engine that struck decedent had carried a gang of workmen from Paintsville, a point west of Thealka, to assist in repairing a washout, and was returning to Paintsville. It had run to Thealka on the west-bound track and was returning on the same track. At the time of the accident decedent was walking from Paintsville to Thealka and was facing the approaching engine. Dan Staggs and his brother Melvin Staggs, were present and saw the accident.

According to Dan Staggs, he and his brother were on the track next to the river. They saw a train coming and got over on the other track. The train came on and struck decedent. Decedent was about 60 feet from the old road crossing, and about the same distance from the new crossing. He first saw the train when it was west of Muddy branch crossing. When he first saw decedent the train was from 50 to 70 yards from him. The headlight on the engine was dim. If it had been bright the engineer or brakeman could have seen decedent for a distance of from 150 to 200 yards. On cross-examination he stated

that Muddy branch crossing was about a quarter of a mile from where he was. He did not see the boy until he was within about 50 yards from the train. He had his head down and stepped up in front of the train. He did not know whether or not decedent made any attempt to get off the track. It was a dark night.

According to Melvin Staggs, decedent was killed between the old road crossing and the new crossing. He did not hear the bell rung or the whistle blown. Decedent was about 100 or 150 feet from the road crossing at the time he was killed. The track at the place where the boy was killed was a pretty straight track. There was a slight curve. After the train struck the boy it ran about its own length. At the time he was found he was closer to the old road crossing. The train had knocked him there. He was about 20 or 25 feet from decedent when he first saw him. He was walking toward the train, and the train was only 5 or 10 feet away. There was nothing to prevent him from seeing the train approach.

For the company, J. G. Gilley, its assistant engineer, testified that from the public road crossing to the point of accident the distance was 261½ feet. From where the boy was found on the track to the railroad bridge across Paint creek it was 415 feet. From the road crossing to Muddy branch it was approximately 2,500 feet. W. W. Burke, the engineer in charge of the engine, testified as follows: The lights on the engine were in perfect condition. The night was foggy, and there was a drizzling rain. There were no cars attached to the locomotive. Before getting to the Muddy branch crossing he blew the whistle. When about 150 or 175 feet past the crossing at the mouth of Muddy branch there were three boys on the track. The fireman said: "Shoot her." Just after they passed the road crossing he saw the boy on the track and put on the emergency brake and made just as sudden a stop as possible. He observed the boy on the east-bound track. The boy then crossed from the east-bound track to the west-bound track. When he stepped from the west-bound track he put his hand up in front of his face like he was trying to shield his eyes from the headlight. When he stepped upon the west-bound track witness put the brake in emergency and stopped the engine. In doing this he used all the appliances at hand to prevent the injury. There was nothing else he could have done. On cross-examination he stated that trains used either track, according to the current of traffic. He could

not give any estimate as to how far the boy was away when he first saw him. At the time he was running about 15 miles an hour. He stopped in about an engine's length. The engine is about 60 or 75 feet long. The wheels locked and slid at the time. The engine was equipped with sand to sand the track. Though the track was wet he did not turn the sand on, as he did not have time. There was a slight upgrade. It was so foggy he could only see about 5 car lengths, or a distance of about 300 feet. He did not see the boy until he ran in front of the engine.

According to Albert Vanhoose, the fireman on the engine, after they whistled for the Thealka crossing, and had gone about 100 yards past the crossing, he saw some boys walking on the track paying no attention to the bell ringing, and being right close to them he "hallood" to the engineer and said: "Shoot her." The engineer put the brake in emergency and stopped the train. The headlight was in extra good condition. There was a gradual curve at the place of the accident. The light did not shine much on his side. The locomotive obstructed his view. He could see about 600 feet. He did not see the man coming down the east-bound track. They were running between 15 and 18 miles an hour at the time. He did not see deceased before he struck him. At the time of the accident he was watching out on his side. Burton Maehew was on the head brakeman's seat on the left-hand side of the engine. He did not see the deceased before he was killed, as the engine obstructed his view. They had an electric headlight and could see about 200 feet. The light from the headlight shines partly on the east track. You could see a person coming down the east track if close enough. The light was shining between the east and west track to some extent. There was something like 4 feet between the tracks. He had seen them stop engines, and the engine could have stopped within 50 or 75 feet. It was about 260 feet from the public crossing to the cross-roads. The deceased was struck about 30 feet west of the cross-over, towards the public crossing. The night of the accident was dark and rainy and foggy, and the track was slick. The light shone about 200 feet from the public crossing. The train could have been stopped in about 60 feet.

Though it be true that one who steps immediately in front of, or walks headlong into, an approaching train

that is plainly observable is guilty of contributory negligence as a matter of law (L. & N. R. Co. v. Sizemore's Adm'r., 221 Ky. 701, 299 S. W. 573) yet, if those in charge of the engine saw, or, by the exercise of ordinary care could have seen, decedent's peril in time to avoid the injury by ordinary care, appellant is liable notwithstanding the decedent's contributory negligence. Cahill v Cincinnati, N. O. & T. P. R. Co., 92 Ky. 345, 18 S. W. 2, 13 Ky. Law Rep. 714; Doll v. Louisville R. Co., 138 Ky. 486, 128 S. W. 344; Paducah Traction Co. v. Walker's Adm'r, 169 Ky. 724, 185 S. W. 119.

It cannot be said that the evidence that the decedent stepped on the west-bound track immediately in front of the approaching engine is all one way. Though the engineer first stated that decedent first crossed from the east-bound track to the west-bound track, he admitted on cross-examination that he did not see the boy until he ran in front of the engine. The reason was that the boy approached from the fireman's side. If, as a matter of fact, the decedent was on the east-bound track, and then stepped to the west-bound track, it is difficult to perceive, in view of the fact that the curve was only slight, and that the distance between the two tracks was only 4 feet, why neither the engineer nor the fireman saw him. Of course, if the headlight shone between the tracks, the curve was not so great that it did not shine also on the tracks. There is evidence in the case from which the jury might infer that decedent was on the west-bound track and could have been seen for a distance of 200 feet. If so, he was in a position of peril, and the time for action had come. Had they then acted they could have stopped the engine in about 60 feet, or have sounded the warning that might have saved the life of the decedent. Cincinnati, N. O. & T. P. R. Co. v. Jones' Adm'r, 166 Ky. 817, 179 S. W. 851. In the light of all the circumstances we are not prepared to say, as a matter of law, that those in charge of the engine used ordinary care to avoid injuring the decedent after they discovered, or by the exercise of ordinary care could have discovered, his peril. It follows that appellant is not entitled to a reversal, with directions for a peremptory instruction.

Judgment affirmed.