## Pence's Adm'r v. Louisville & N. R. Co.

(Decided June 16, 1936.)

ROBERT E. HOGAN for appellant.

WOODWARD, DAWSON & HOBSON, ROBERT P. HOBSON and ASHBY M. WARREN for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Reversing.

Mrs. Sallie Pence, an elderly lady, was killed by a train of the appellee while walking on the track near Stanford in Lincoln county in the late morning of August 6, 1934. The suit for damages brought by her administrator in Jefferson county resulted in a directed verdict for the railroad company at the close of the plaintiff's evidence. The appeal is from the judgment entered thereon.

While it appears that as a matter of real fact the use by pedestrians of the railroad at the point of the accident was hardly sufficient to constitute the decedent a licensee, yet, as the appellee concedes, there is testimony that it was. The case is to be decided upon that view. The reference to directions is that of the record, north and south in railroad parlance, although geographically it is east and west.

The Blackerby home was adjacent to the right of way and about 800 feet north of the Goshen road crossing. Harold Blackerby, then thirteen years old, noticed Mrs. Pence, wearing a bonnet or shawl, walking slowly on the track just north of the crossing. His mother and sister had their attention attracted to the approaching train by its speed, the unusual blowing of the whistle, and its sudden stopping. Mrs. Blackerby remembers that the whistle was sounded for the crossing and had continued blowing. Mrs. Pence was struck about opposite the Blackerby house. Virginia Blackerby testified the cars were "bumping together" as the engine went by. The boy had gone about his affairs after having seen Mrs. Pence on the railroad and was at the home of Joe Brown some 350 yards above his house when he heard the whistle blowing and the bumping of

the train, apparently as the brakes were applied. It is deducible from the time and place where he said the train was when he heard the bumping that the engine was then 800 feet beyond where the woman was struck. He heard the noise before he saw the train. It was not stopped until it had gone about 960 feet beyond.

The engineer was introduced as a witness by the plaintiff. His train consisted of 28 loaded cars and he was traveling about 30 miles an hour and, he testified, was maintaining a lookout at all times. He blew for the highway crossing, which was about 1,000 feet south of the Goshen road. In sounding the whistle for the Goshen crossing, he blew it continuously until he got upon it. Then he glanced at his watch and as he returned it to his pocket, having gone perhaps 100 feet beyond the crossing, he discovered the decedent upon the track for the first time and immediately blew the alarm signal. He kept the whistle wide open until he struck her, but it had not attracted her attention. After proceeding perhaps another 100 feet after her discovery and seeing that she was not getting off the track the engineer immediately applied the emergency brake and kept it on until his train was stopped. He had used, as he testified, all the means at his command to stop the train and avoid striking the woman. Although the engineer estimated the distance between him and the decedent when he first saw her as about 500 feet, the measurements later made showed that he was perhaps 700 feet away when he first saw her, and 600 feet when he applied the brakes. He testified that he could not have stopped his train in a shorter space than he did.

Regarding the places where the boy went and what he did after seeing Mrs. Pence on the railroad, there was quite an interval of time before she was struck by the train. But it is a reasonable and justifiable inference that she was on the track thereafter until the moment the engineer saw her.

While all the testimony is that before the engineer saw the pedestrian he was doing all the law required of him by observing a lookout and sounding the crossing whistles, and that he applied the emergency brake and stopped the train as quickly as possible, the question arises whether or not the circumstances and conditions proven do not constitute sufficient evidence to take the case to the jury.

The premise is, as we have stated, that the decedent was a licensee. The duties of the railroad company in relation to a licensee are materially different from those relating to a trespasser. To the latter it owes no duty to keep a lookout for his presence, and must exercise ordinary care only to avoid injuring him after his peril shall have been discovered. Louisville & N. R. Co. v. Horton, 187 Ky. 617, 219 S. W. 1084; McKinney's Adm'x v. Cincinnati, N. O. & T. P. R. Co., 242 Ky. 167, 45 S. W. (2d) 1031. But in the case of a licensee, it is the duty of those in charge of a train to anticipate his presence, to maintain a lookout for him, to give timely warning of the approach of the train, and to operate it at reasonable speed and under control, using ordinary care to avoid injury; the duty to exercise ordinary care to learn of the approach of the train, and to keep out of its way, being upon the licensee. Moran's Adm'r v. Chesapeake & O. R. Co., 176 Ky. 409, 195 S. W. 809; Thomas' Adm'r v. Chesapeake & O. R. Co., 245 Ky. 352, 53 S. W. (2d) 546.

Here the track was straight for 1,800 feet south of the point of the accident, and no reason is suggested why the engineer did not see the deceased sooner than when he was about 700 feet distant had he been looking, except the possibility that she was not then on the track. It is the rule for weighing evidence in cases of this character not to accept as conclusive the testimony of the engineer that he did exercise all the care and diligence he could have exercised, and did use all the means at his command to avoid striking the pedestrian, where there are substantial circumstances showing that he did not do so. Of such, for instance, is where there was a straight-away, unobstructed vision, and a confession that he did not see one whom he was under the legal duty to see, or having seen one to whom he owed no such duty, that he did not exercise ordinary care to avoid striking him after having seen him. Vanarsdall's Adm'r v. Louisville & N. R. Co., 65 S. W. 858, 23 Ky. Law Rep. 1666; Chesapeake & O. R. Co. v. Davis' Adm'r, 230 Ky. 268, 18 S. W. (2d) 1108; Cornett's Adm'r v. Louisville & N. R. Co., 233 Ky. 797, 26 S. W. (2d) 1031; Chesapeake & O. R. Co. v. Hicks' Adm'r, 248 Ky. 510, 58 S. W. (2d) 910; Louisville & Interurban Ry. Co. v. Pulliam's Adm'x, 259 Ky. 82, 82 S. W. (2d) 191.

It seems to us that the evidence as a whole was sufficient to authorize a submission of the case to the jury.

Wherefore, the judgment is reversed.