## Benge's Administrator v. Marcum, et al.

(Decided March 7, 1922.)

### Appeal from Clay Circuit Court.

1. New Trial—Newly Discovered Evidence—Requisites.—To warrant the granting of a new trial on the ground of newly discovered evidence, it must appear (1) that the evidence is of such a decisive character as to render a different result reasonably certain; (2) that is has been discovered since the trial; (3) that it could not have been discovered before the trial by the exercise of reasonable diligence; (4) that it is material to the issue; (5) that it is not merely cumulative or impeaching.

2. New Trial—Newly Discovered Evidence—New Trial Not Granted For Evidence Known Before Trial.—A new trial on the ground of newly discovered evidence will not be granted where the evidence was known before the trial and bore on an undisputed point.

3. New Trial—Newly Discovered Evidence—New Trial Not Granted For Evidence Known Before Trial.—A new trial on the ground of newly discovered evidence will not be granted where the evidence

was known before the trial and could have been obtained by the exercise of the slightest diligence.

4.  New Trial—Newly Discovered Evidence—New Trial Not Granted to Interrogate Witness as to Fact Which Should have Been Elicited.—The extent of a witness's knowledge should be ascertained while he is being examined, and a new trial will not be granted to give counsel an opportunity to interrogate a witness as to a fact which a proper examination in the first instance would have elicited.

RAWLINGS & WRIGHT and MORRIS & JONES for appellant.

A. T. W. MANNING for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

On August 3, 1911, T. Y. Marcum and Sallie Marcum, his wife, executed and delivered to E. J. Benge their promissory note for $5,648.48, payable twelve months after date, and secured its payment by a mortgage on a tract of land in Clay county. Miss Benge died in November, 1911, and a few months later her administrator brought suit for the enforcement of the mortgage lien. In addition to a plea of usury which was allowed, T. Y. Marcum claimed that he never received $825.00 of the money mentioned in the note and filed with his answer the following paper:

"This is to certify that I am to credit the mortgage note that I hold against T. Y. Marcum eight hundred and twenty-five dollars on a final settlement. This 28th day of August, 1911.

"(Sd.) MISS E. J. BENGE."

In support of this contention Marcum testified that the sum loaned by Miss Benge was represented by four checks, one to Isham Hensley for $1,275.00, one to Dr. I. S. Manning for $1,356.81, one to D. L. Walker for $1,000.00 and one to T. Y. Marcum for $852.50. He further stated that the above writing was written and signed by Miss Benge, and that he never received any money at all or any other checks than those mentioned. He also testified that Ann Creech was present when the checks were written. J. W. Benge, another witness for Marcum, testified that he was a cousin of Miss Benge and that he heard her say that Marcum did not get all the money he was entitled to have on the note and mortgage, and that was the first time she had ever known of his failing to take all he could get. He did not remember the exact

amount, but it was somewhere between seven and eight hundred dollars.

On the other hand, Ann Creech deposed that she was present when the business was transacted and heard the matter discussed. In addition to the checks given to Hensley, Manning, Walker and Marcum, Miss Benge deducted the interest from the note in advance, and this, together with about $400.00 which Marcum owed her, made up the difference between the face of the note and the amount represented by the checks. At the time she testified, she had before her Miss Benge's bank book and the stubs from her check book, and they showed the payments to Hensley, Manning, Walker and Marcum. She further stated that nothing was said at the time about there being any balance due Marcum, and that she was well acquainted with Miss Benge's handwriting, and the paper claimed to have been executed by her was not signed by her. W. W. Rawlings, who had been Miss Benge's attorney for a number of years and knew her handwriting, also testified that the signature to the paper in question was not written by Miss Benge.

On final hearing the court refused to allow Marcum credit for the $825.00 which he claimed not to have received, and judgment was rendered for the full amount of the note less the usury and certain admitted credits.

A few days later, Marcum and wife brought suit for a new trial. The first ground relied on was that the entire consideration received by Marcum was represented by the checks to Hensley, Manning, Walker and Marcum; that the books of the First National Bank of London, where Miss Benge kept her account, showed that these were the only checks issued by her in making the loan; that at the time the case was prepared for trial, the First National Bank was in the hands of a receiver; that counsel for plaintiffs was informed that access to the books of the bank could not be had for the purpose of examining the account of E. J. Benge, and that he acted upon this information and made no effort to obtain the evidence; that plaintiffs relied upon their counsel in the matter, and upon his statements that the said bank records could not be obtained for the reason that they were not open to public inspection, but were in the hands of a government officer who would not permit them to be used as evidence; that neither of the plaintiffs knew what the bank records would show until within the last ten days. The other ground relied on for a new trial is set forth as follows:

"Plaintiff can prove by Robert Buttry that several weeks after the execution and delivery of the note sued on in said action that said E. J. Benge sent a communication by said witness to this plaintiff telling him that she had the balance of his money ready for him; that this was the $825.00 above mentioned; that plaintiffs knew before the trial of said case that they could prove said fact by said witness Buttry, but he was not then or at any time while said case was being prepared for trial, or at any time thereafter before judgment was rendered in Clay county, Kentucky, where he formerly resided and his whereabouts was unknown to either of these plaintiffs and they were unable to locate or communicate with said Buttery until after the rendition of said judgment herein complained of; that they have located him now and can obtain his testimony any time."

Upon the application for a new trial, R. H. McKee, clerk to the receiver of the First National Bank of London, gave a list of the checks drawn by Miss Benge. The list included the checks to Hensley, Manning, Walker and Marcum, but showed no other check to Marcum except one for $3.50. Marcum testified that no note for about $400.00 was included in the mortgage, as he did not owe Miss Benge more than eight or nine dollars at the time. At one time he had owed Miss Benge about $350.00, secured by mortgage, but this indebtedness was paid and released during the year 1905. On being asked where Robert Buttery was at the time the old case was prepared for trial, he said, "I don't know. I little believe he was in the west; I am not sure. I know it was talked he was there; he talked of going and might have went." Pleas McDaniel testified that the signature to the paper in regard to the $825.00 was like Miss Benge's writing as it always appeared to him. Robert Buttry deposed that during the month of September or October, 1911, Miss Benge gave him a note to deliver to Marcum. She mentioned to him that she wanted to make arrangements with Marcum to see if he was going to get the remainder of the money, and said it was the first time she ever knew Marcum not to get all the money he wanted. He delivered the note to Marcum and Marcum read it in his presence. She asked him why he did not come to get the $825.00. He further stated that he left Kentucky in the spring of 1912 and stayed away four of five weeks. He then returned and had been in Kentucky for about six years. R. W. House testified that he was acquainted with the handwriting of

Miss Benge, and in his opinion the signature to the paper above set out was in her handwriting. Marcum was recalled and testified that he lived six or seven miles from Robert Buttry, and that he was informed that Robert was in St. Louis at the time Ann Creech's deposition was taken, and was under the impression that he was still there until the preceding summer. He further testified that A. B. Hampton represented him on the first trial and the reason that he did not get other witnesses on the genuineness of the signature of Miss Benge to the due bill was that Hampton said they had all the evidence that was necessary. He admitted that he only made one inquiry as to where Robert Buttry was, and that was of Jim Benge, and his recollection was that Jim Benge told him that Robert had gone to Missouri. The testimony of A. B. Hampton, attorney for Marcum on the first trial, was as follows: The case was principally prepared before the First National Bank closed. At one time he examined the books with Mr. Fitzgerald, the then cashier, with the view of taking his deposition. On one or two occasions he had an agreement with Mr. Rawlings to take a deposition. After that he had a talk with Fred Weitzel, the receiver. Weitzel declined to give his deposition voluntarily, but said that Hampton would have to take the legal course by *subpoena ducis tecum.* This fact he communicated to Mr. Marcum. He never advised Marcum that it would be impossible to get the deposition because he knew that he could eventually get it. J. W. Benge, who had testified on the first trial for Marcum, deposed that he knew the handwriting of Miss Benge and the signature to the due bill was in her handwriting. He also testified that Miss Benge told him that Marcum had a due bill and she understood he was not going to use the money that the due bill called for. She said that it was the first time she ever knew of Tyre having more money than he could use. On cross-examination he admitted that if he had been asked about these matters when he formerly testified, he would have given the information if he had recollected it. The court awarded the Marcums a new trial, and then rendered judgment to sustain their contention as to the $825.00. The administrator appeals.

To warrant the granting of a new trial on the ground of newly discovered evidence, it must appear (1) that the evidence is of such a decisive character as to render a different result reasonably certain; (2) that it has been discovered since the trial; (3) that it could not have been

discovered before the trial by the exercise of reasonable diligence; (4) that it is material to the issue; (5) that it is not merely cumulative, or impeaching. 20 R. C. L. 290. Of course where the evidence was known before the trial, there is no basis whatever for granting a new trial on the ground of newly discovered evidence. In such a case the party relying on it must produce it, or ask for a continuance or postponement in order to give him an opportunity to produce it. Fleet v. Hollenkemp, 13 B. Mon. 219, 56 Am. Dec. 563; 20 R. C. L. 291. Let us look at the first ground in the light of these principles. In the first place Marcum and his counsel knew what the books would show, and his counsel says that he did not tell Marcum that he could not procure the evidence. In the next place, Marcum had testified that the only checks given by Miss Benge were the four checks to Hensley, Manning, Walker and Marcum. In this he was corroborated by Miss Creech, a witness for the administrator, who verified her own statement by the production of Miss Benge's bank book and stubs. Indeed, there was no issue as to the number or amount of the checks, the only contention of the administrator being that the difference between the checks and the face of the note consisted of interest which was deducted in advance and of a debt theretofore owing by Marcum which was paid in the transaction. In other words, the case is one where not only was the evidence known before the trial, but it bore on an undisputed point, and therefore could not have been of such a decisive character as to render a different result reasonably certain.

Taking up the second ground, we find that Buttry's evidence was known to the Marcums long before the first trial, and as he was absent from the state only four or five weeks in the spring of 1912, his evidence could have been obtained by the exercise of the slightest diligence. Therefore, so far as he is concerned, it is apparent that no case of newly discovered evidence is presented.

But it is insisted that the newly discovered evidence of J. W. Benge, set forth in the amended petition for a new trial, that Miss Benge had told him of the due bill she gave to the Marcums, and that the signature to the due bill was in her handwriting, was sufficient to sustain the judgment. Benge was friendly to the Marcums and was one of their principal witnesses on the first trial. He admits that if he had been asked about the same matters during his examination on the first trial, he would have given the same information if he had recollected it.

Clearly, the extent of a witnesses's knowledge should be ascertained while he was being examined, and a new trial will not be granted in order to give counsel an opportunity to interrogate a witness as to a fact which a proper examination in the first instance would have elicited. Lowry v. Erwin, 6 Robb. (La.) 192, 39 Am. Dec. 556; 20 R. C. L. 293.

As none of the grounds relied on was sufficient, it is clear that the court abused a sound discretion in granting the new trial.

Judgment reversed and cause remanded with directions to dismiss the petition.