## Chesapeake & O. Ry. Co. et al. v. Hicks' Adm'r.

(Decided March 14, 1933.)

BROWNING & DAVIS and COMBS & COMBS for appellants.

A. J. MAY and EDWARD L. ALLEN for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER— Affirming.

The administrator of Thomas Hicks, deceased, instituted this action against the Chesapeake & Ohio Railway Company, Jay Stith, and E. E. Lee, seeking to recover damages for the death of his decedent alleged to have been caused by the negligent operation of one of the company's trains by Stith and Lee, the engineer and fireman. Trial before a jury resulted in a verdict and judgment for plaintiff for $10,000, and defendants are appealing.

The accident occurred a few feet from the tipple of the Wells-Elkhorn Coal Company in its mining camp known as Welco, on the afternoon of December 21, 1929. Deceased and his wife were walking eastward on appel-

lant's tracks, when they were struck and killed by one of its trains proceeding in the same direction. There is a curve of about 10 per cent. in the tracks where the accident occurred, and some 300 or more feet west of the tipple there is an embankment on the inside of this curve. The engineer was in the right-hand side of the cab of the locomotive and on the outside of the curve, and the engine obstructed his view of the tracks. It is shown in the evidence for appellee that it is 386 feet on a straight line from where deceased and his wife were struck to a point from which they could have been seen by a man in the left side of the cab, and there is nothing to obstruct the view at any place between those points. In fact, the fireman testified that he was in his usual place in the cab; that the curve in the tracks was in his favor and he could see from 275 to 300 feet ahead to the point of the accident in coming around the curve. According to the evidence, the Wells-Elkhorn mining camp has a population of about 150, but there are a number of other camps nearby. A further discussion of the situation and of the evidence relating to the accident will be given in disposing of the various grounds argued for reversal.

Grounds argued and relied on for reversal are, in substance: (1) That deceased was guilty of contributory negligence as a matter of law and therefore appellants' motion for a directed verdict should have been sustained; (2) that instruction No. 1, given by the court, is erroneous and prejudicial; (3) that the court erred in not granting appellants a new trial on the ground of newly discovered evidence.

While some question is made as to the probative value of evidence offered on behalf of appellee, it is conceded by counsel for appellants that, notwithstanding manifest exaggerations and the general unsatisfactory nature of the testimony for appellee, there was sufficient evidence of user by the public of the tracks at and near the point of the accident to make an issue of fact as to whether the presence of persons upon the tracks should have been anticipated by the trainmen. In view of this concession, it will be unnecessary to discuss the evidence showing the use of the track by pedestrians.

As a basis for argument that deceased was guilty of contributory negligence as a matter of law, appel-

lants point to evidence that the noise from the coal tipple which at the time was in operation was so great as to prevent one near it hearing signals of the approaching train. It is urged that the situation is the same as if deceased had been deaf and therefore under a duty and obligation to exercise his sense of sight to learn of the approach of the train in order that he might keep out of its way. Witnesses who were present and saw the accident testified that neither appellee nor his wife looked back. This argument would have more force if there had been no conflict in the evidence as to whether the noise from the operation of the tipple was so great as to prevent one near it hearing the ordinary signals given by the trainmen, but the men who were operating the tipple testified that they could and did hear signals given by trains when the tipple was in operation, and that they heard the blast of the whistle given in this instance immediately before the locomotive struck deceased and his wife. They are corroborated on this point by a number of other witnesses.

In cases of this character, the general rule is that the question of contributory negligence is one for the jury where, considered in the light of proven facts and circumstances, there is room for honest difference of opinion among intelligent men as to whether the conduct of the injured party was that of an ordinarily prudent man. McClelland's Adm'r v. Miller's Creek Railroad Company, 170 Ky. 1, 185 S. W. 142; City of Henderson v. Book, 187 Ky. 612, 219 S. W. 787; P. Bannon P. Line Co. v. Battle's Adm'r, 183 Ky. 367, 209 S. W. 4. It is manifest that there is nothing to remove the case at bar from this general rule and to place it within the exception contended for by appellants.

Counsel for appellants enter into extended argument and citation of authorities in an endeavor to demonstrate that instruction No. 1 given by the court was erroneous and highly prejudicial to them. Counsel are quite correct in their assertion that this instruction was erroneous, but the error was prejudicial to appellee rather than to appellants. The only duty it imposed on appellants was to use ordinary care to give the usual signals when they learned of the presence of deceased on the tracks. In other words, it is nothing more than a "last clear chance" instruction.

The evidence for appellee is to the effect that no

signals were given by blowing the whistle or ringing the bell after the train left the station of Bosco, a mile or more from where the accident occurred, until the instant before deceased was struck. This was testified to by witnesses who were passengers on the train; however, both the engineer and fireman testified that the usual signal of two long and two short blasts of the whistle was given at a road crossing about 1,000 feet from the tipple, and the bell was started and continued ringing until deceased was struck.

The fireman testified that the accident occurred about 12:30 p. m., and that the day was clear and the track dry; that in rounding the curve he saw deceased and his wife on the track 275 or 300 feet ahead, and as soon as he saw they were not going to get off he called to the engineer "to shoot them and blow the whistle," which he explained in railroad parlance means "apply the emergency brake and stop as soon as possible"; that the engineer immediately applied the brakes and sounded the whistle. The engineer testified that, when the fireman called to him, they were halfway around the curve and about 150 feet from the tipple, and that they ran about 200 feet after the fireman called to him. He testified that the fireman could have seen these people from a point about 275 feet away, so it will be seen from the evidence of these employees of the company that, if the fireman had warned the engineer when he first discovered deceased on the track and the engineer had immediately acted on the warning, the train could have been stopped before it struck deceased.

Clearly, appellee was entitled to this instruction under the foregoing evidence, and under it and the evidence of user of the tracks by the public, the effect of which is admitted by appellants' counsel, he was entitled to much more. In such circumstances, it is obvious, and we are constrained to hold, that this ground is wholly without merit.

By evidence for appellee, it is shown that, at the time of his death, deceased was about 52 years old. In an amended motion and grounds for new trial, it is represented by appellants that the age of deceased was not alleged in the petition, and they assumed that his age would not be misstated and would be correctly given in evidence, but that since the trial they have learned that deceased was at least 60 years old and probably older;

that deceased was born in Knott county in a remote and inaccessible section, and that they had not had time to make a complete investigation as to his age, but, if given opportunity, could show by a number of witnesses that he was at least 65. They filed in support of their motion affidavits of a number of newly discovered witnesses. This case was filed on February 10, 1930, and summons was fully executed two days thereafter. It was finally tried the latter part of September, 1931. Appellants, or at least their counsel, knew during all the while that the age of deceased was material and would be in issue; yet their motion and grounds for new trial and supporting affidavits are silent as to any investigation, inquiry, or exercise of any diligence whatever to learn the facts or to procure witnesses to testify concerning the age of deceased.

The court is not authorized to grant a new trial on the ground of newly discovered evidence unless it is shown that the party seeking it has used reasonable diligence to discover witnesses and to produce the evidence at the time of the trial. It is not sufficient that the motion and grounds merely allege that due diligence has been exercised but it must be shown that such diligence was actually exercised. Hudson Engineering Co. v. Shaw, 167 Ky. 27, 179 S. W. 1083; Benge's Adm'r v. Marcum, 194 Ky. 121, 238 S. W. 174; Home Insurance Co. v. C., N. O. & T. P. R. Co., 182 Ky. 778, 207 S. W. 487.

There is nothing in the motion and grounds for new trial or in supporting affidavits to indicate the exercise of even the slightest diligence on the part of appellants, and our conclusion is that the court did not err in overruling the motion and grounds for new trial.

No error appearing in the record prejudicial to appellants' substantial rights, the judgment is affirmed.