Harrison BAIRD, Plaintiff-Appellee,

v.

CINCINNATI, NEW ORLEANS & TEXAS PACIFIC RAILWAY CO., Inc., Defendant-Appellant.

No. 14913.

United States Court of Appeals Sixth Circuit.

April 4, 1963.

James F. Clay, Danville, Ky. (Bradley & Bradley, Georgetown, Ky., on the brief), for appellant.

Pierce Lively, Danville, Ky., for appellee.

Before CECIL, Chief Judge, and MILLER and O'SULLIVAN, Circuit Judges.

O'SULLIVAN, Circuit Judge.

Plaintiff-appellee, Harrison Baird, while driving an automoble, was struck by the engine of defendant-appellant's freight train at a crossing in Lincoln County, Kentucky. For his personal injuries and damage to his automobile, he recovered a judgment of $11,297.20, entered upon a jury verdict. On this appeal, the appellant railroad asks reversal upon the single ground that plaintiff was guilty of contributory negligence as a matter of law. Its motion for directed verdict on that ground was denied. Jurisdiction is based upon diversity of citizenship and Kentucky law controls.

The crossing in question is made by the railroad's double main line tracks, running north and south, and a country road which runs east and west. The main line tracks come up to the crossing through what was described as a "cut"

with a bank of varying height along the east side of the right of way. The road, as it approaches the crossing from the east "drops off" from a hard surfaced portion thereof and goes "down" to the crossing. The train which collided with plaintiff's vehicle was coming north through the cut at a speed which the jury could find to have been 60 miles an hour. Plaintiff was proceeding westerly into the crossing at 5 miles an hour. The right front corner of the defendant's engine struck the left front fender of plaintiff's automobile. A spur track, paralleling the main line track, crosses the road at a point 69½ feet east of the easterly main line track. The only dimensional description of the degree of drop of the road was that the top of the rail of the spur track was 1½ feet higher than the top of the rails of the main line at the crossing. That the road may have actually been lower than the main line tracks somewhere between them and the spur track could be inferred from plaintiff's testimony.[1] Neither plaintiff nor defendant provided any more accurate information as to the grade of the road in relation to the main line tracks between the place where it "dropped off" the hard surface and the intersection with such tracks. Accurate information in this regard would have aided the jury as well as the District Judge and this Court in considering the question of contributory negligence. Critical to the determination of whether plaintiff was, as a matter of law, guilty of contributory negligence is the opportunity plaintiff had to see the approach of defendant's train as he came down to, and into, the crossing.

The accident occurred in the early daylight of March 7, 1960. It was snowing and windy. The road was "a solid sheet of ice." Plaintiff testified that as he approached the crossing, there was a string of boxcars standing on the spur track north of the road (to plaintiff's right). To the west of these, also north of the road, were a house trailer and a small building, the latter being 23½ feet east of the east track of the main line. These objects on the north side of the road, plaintiff said, obscured his view to his right and required him to give special attention in that direction, at least until he had passed them. What he saw to his left and what, according to him, was his ability to see to his left, would permit an inference that he had to be substantially "up to" the crossing before a satisfactory view could be had.[2] Other witnesses corroborated plaintiff's testimony that a motorist had no adequate view of the track

---

1. "I dropped off the road down to enter the tracks" at a point 60 to 90 feet from the tracks. The road "just drops down into a little, narrow place." As he approached the main line tracks, he "was getting down in a hole farther. In other words, it goes down in a hole, the elevation."

2. "Q. Mr. Baird, as you got up to those boxcars which you say were 60 or 70 feet from the crossing, tell exactly what you did as you proceeded on up to the crossing?
"A. Well, I got up to the cars and— in other words, I looked down to my left and there was nothing coming; I looked to the right and there was those boxcars, you couldn't see around them at all. Then when I got up just as I entered the crossing, there the train was coming right through the cut right into me.
 * * * * *
"Q. Mr. Baird, what was on the left as you approached the crossing? What was your view to the left down toward the bridge? (The bridge was 745 feet south of the crossing.)
"A. I didn't have any view. In other words, there were a bank and I couldn't see the crossing. In other words, I couldn't see anything to the left.
"Q. Until how far?
"A. Well, until I got right up to the crossing. I would say 15 feet before you can see any ways down the track at all, in other words that's the bank. * * *"
After saying that he looked to his left (south) when he was 18 to 20 feet away from the track (main line) and did not then see the train, he indicated that he took a further look and the following was said:
"Q. You couldn't see as far the second time as you could the first time?
"A. No, sir.
"Q. Why not?
"A. Well, I was getting down in a hole farther. In other words, it goes down in a hole, the elevation."

to the south of the crossing until he was on the edge of the crossing.[3]

From the foregoing testimony, however lacking in preciseness, we think that a jury could find that the plaintiff's view to his left was in some degree impaired until the front of his car was close to the track upon which he was struck. He testified that he first saw the train when it was a few feet from him and substantially at the instant when it struck him. Having in mind that the train was going 60 miles an hour, it cannot be said that reasonable minds could conclude only that plaintiff must have, or should have, seen the train on the occasions when he looked preparatory to entering the crossing.

■■■ There was conflict in the evidence as to whether a whistle was blown or a bell rung by defendant's train crew. While some of plaintiff's proof on this subject was negative evidence, there was testimony by one or more witnesses that, at their proximity to the scene, they could have heard such signals, if given, and that none were heard. The plaintiff, alert to his approach to the crossing, testified that he heard no signals. Whether the required signals were given was a jury question. Lousiville & Nashville Railroad Co. v. Ratliff's Adm'r, 260 Ky. 380, 386, 85 S.W.2d 1006; Green, Adm'r v. Baltimore & Ohio Railroad Company, 299 F.2d 837, 839 (C.A. 6, 1962). Defendant concedes that the signals were not given for the required distance of 50 rods south of the crossing (K.R.S. § 277.190) and does not question but that the jury could find the defendant guilty of negligence proximately a cause of plaintiff's injuries. In the testimony of plaintiff and his witnesses there were some conflicts and inconsistencies and some statements that could support a finding that plaintiff should have seen the train for a substantial time and distance prior to coming onto the crossing. Two witnesses much farther to the east of the crossing saw the train approaching it, but they were on higher ground than was the plaintiff. It was for the jury to resolve any conflicts and inconsistencies in this evidence and make its finding of the fact thereon. Dickerson v. Shepard Warner Elevator Co., 287 F.2d 255, 259 (C.A. 6, 1961); Bathory v. Procter & Gamble Distributing Co., 306 F.2d 22, 25 (C.A. 6, 1962).

■■■ Defendant's position is that its evidence was so positive and irrefutable on the question of plaintiff's view of the crossing that plaintiff's evidence, above reviewed, was overcome and could not permit a jury to exonerate plaintiff from defendant's charge of contributory negligence. We mention, preliminarily, the familiar rule that considering the question of directing a verdict on the ground of contributory negligence, the evidence and inferences justifiably drawn therefrom will be viewed in the light most favorable to plaintiff. Hinton v. Dixie Ohio Exp. Co., 188 F.2d 121, 124 (C.A. 6, 1951); Honaker v. Crutchfield, 247 Ky. 495, 501, 57 S.W.2d 502. Likewise, contributory negligence is an affirmative defense and the burden of proving it lies with the defendant; Rule 8.03, Ky.R.C.P.

In support of its contention, defendant relies on some photographs taken at the

---

3. Witness Gilmer:

"Q. Would you describe the terrain to your left as you drive toward that crossing going west?

"A. Yes, it is between a spur line of the railroad and the main track. It is hard to see. You can't see a train until the front of your car has gotten within six or eight feet of the main track before you can see down to the side of that bank.

\*　　\*　　\*　　\*　　\*

"Q. You can see down the track from that crossing signal (conventional cross arm sign, 15 feet east of center of east main line track) can't you?

"A. No, sir.

"Q. You cannot? Are you sure of that?

"A. Not in a car, not any distance. \*　\*　\*"

Witness Wilcher: Being examined on a picture exhibit offered by defendant, said:

"But the picture looks much different than what it actually looks at the crossing because this picture was taken close up to the crossing. Back here the train would have to be approximately close to the crossing before you could see it."

scene and some engineer's measurements. The engineer gave figures as to the height of the bank along the east side of defendant's right of way. At 100 feet south of the crossing, the top of the bank is two feet above the top of the rail of the nearest track. At 200 feet, such dimension is 2½ feet; at 400 feet, it is 7.9 feet; at 500 feet, it is 8.6 feet; at 600 feet, it is 7.3 feet and at 700 feet, it is 11 feet. At 745 feet south of the crossing, where a bridge or overpass crosses the tracks, the height of the bank above the rails is "something over 11 feet, but less than 22 feet." Defendant's diesel engine which pulled the train involved is 15 feet 3 inches high. Defendant's engineer further testified that the top of the rail of the spur track (69½ feet east of the main line) is 1½ feet above the top of the rail of the nearest main line track. Defendant claims that such figures establish beyond dispute that plaintiff by the exercise of ordinary care, could and should have seen defendant's train at all times during his journey from the spur track to the main line. We cannot agree. The engineer's findings did not include any information as to the grade of the road between the spur track and the main line, in which distance there was evidence that plaintiff went down "into a hole." Certainly it was permissible for the jury to find that the grade of the road between the spur and the main track was such as to increase the bank's impairment of the view beyond what the engineer's figures disclosed. From the engineer's figures, it cannot be said that when plaintiff reached the spur track the train was necessarily within the 734 feet between the crossing and the overpass. It was going 60 miles per hour or 88 feet per second; the plaintiff was going about five miles per hour. The meager engineering data provided, and the lack of information as to the grade of the road forbids an unimpeachable calculation as to when, if ever, the train came into plaintiff's view prior to the time the front of his vehicle arrived at the east main line track. Having in mind defendant's burden of proof, if some measurement or calculation essential to defendant's theory that plaintiff was contributorily negligent is missing, the absence of such essential must be charged to defendant. McFall v. Tooke, 308 F.2d 617, 621 (C.A. 6, 1962).

Defendant's photographs, with the distortions inherent in them, likewise do not, in our opinion, destroy the verbal testimony of plaintiff and his witnesses that no practical view of the oncoming train was available to plaintiff prior to the immediate imminence of collision. While these pictures might, indeed, be persuasive to a finder of the facts, it was for the jury to weigh their probative value against the opposing proofs. The pictures also disclose some amount of brush (leafless at the time) on top of the bank. This brush appears to be of varying height and density along the bank and whether, and how much, such brush added to the bank's obstruction of the view is uncertain. We recognize that there can be situations where photographs, engineering data and physical facts can leave opposing verbal testimony without probative value. Silver Fleet Motor Express v. Wilson, 291 Ky. 509, 165 S.W.2d 48. Defendant's evidence, however, does not so unerringly destroy the legitimacy of inferences that could be drawn from plaintiff's proofs as to leave defendant's claim as the only permissible inference. National Linen Supply Co. v. Snowden, 288 Ky. 374, 156 S. W.2d 186; Reed v. Hostetler, 245 S.W.2d 953, 955 (Ky.1952).

Under Kentucky law, contributory negligence is a defense in bar. Norfolk & Western Ry. Co. v. Bailey, 307 Ky. 386, 211 S.W.2d 154. It will constitute such bar, however, only when defendant has met its burden of proving "that plaintiff was guilty of some specific act, or omission to act, which did not meet the standards of conduct exacted by law." Eichstadt v. Underwood, 337 S.W.2d 684, 686 (Ky.1960). A verdict convicting a plaintiff of contributory negligence will be directed only "where the only fair and reasonable conclusion that can be drawn by reasonable minds is that plaintiff's

own negligence was a contributing proximate cause of the injury." McFall v. Tooke, supra, 308 F.2d at 621; Eichstadt v. Underwood, supra; Neal v. Ashland-Ironton Transfer & Ferry Co., 201 Ky. 332, 256 S.W. 721.

■ What are the applicable "standards of conduct" exacted by Kentucky law? The rigid "stop, look and listen rule" does not obtain in Kentucky. Illinois Central R. Co. v. Applegate's Adm'x, 268 Ky. 458, 468, 105 S.W.2d 153; Louisville & N. R. Co. v. Mitchell's Adm'x, 276 Ky. 671, 677, 124 S.W.2d 1025 and cases cited in those opinions. The rigidity of the stop, look and listen rule, pronounced as federal common law in Baltimore & Ohio Railroad Company v. Goodman, 275 U.S. 66, 70, 48 S.Ct. 24, 25, 72 L.Ed. 167, 168, was relaxed by Pokora v. Wabash Railway Company, 292 U.S. 98, 54 S.Ct. 580, 78 L.Ed. 1149. Both of such decisions preceded Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, but we think that Kentucky law has been, and continues to be, compatible with Pokora.

■ It is the law of Kentucky that a motorist has the right to place some reliance upon a train crew giving the signals which the Kentucky law prescribes, Louisville & N. R. Co. v. Ratliff's Adm'r., 260 Ky. 380, 85 S.W.2d 1006. Such right does not permit inattention to obvious dangers. Where, however, because of factors beyond his control, a motorist's opportunity to discover danger is impaired, he should not, as a matter of law, be barred from recovery because he did not insure his own safety by stopping or employing the extra caution that a reasonably careful driver would use had he reason to anticipate a failure of the train crew to counterbalance his disadvantages by signalling, as the law required it to do. It is, of course, the duty of a motorist to exercise greater care in the face of known hazards. Layman v. Chesapeake & O. Ry. Co., 266 S.W.2d 111, 113 (Ky.1954). We think, however, that plaintiff's description of his repeated looks to the north and south in an unsuccessful effort to overcome the hazards to his discovery of defendant's train might well persuade reasonable minds that he was proceeding with due care under the circumstances.

Not to be misunderstood, we make it clear that if the proofs of the case contained photographic, testimonial or topographic information which, beyond permissible controversy, established that plaintiff had, or in the exercise of due care could have had, an unimpaired view of defendant's northbound train at a time when there yet remained that opportunity that a reasonably prudent man, under like circumstances, would have employed to avoid the collision, we would, as a matter of law, convict Baird of contributory negligence. Its decisions have announced Kentucky's adherence to the general rule that a motorist will not be heard to say that he did not see what was clearly to be seen or that he did not hear what was plainly to be heard. Nashville, C. & St. L. Ry. Co. v. Stagner, 305 Ky. 717, 719, 720, 205 S.W.2d 493. We, however, are of the opinion that a jury could find that the speed of the train, the obstructions on Baird's right, the impairment of his view to the left (caused by the bank, the brush and his being "down in a hole" as he came up to the crossing) all could have combined to prevent Baird from seeing the approaching train in time for protective conduct. Further, we believe that a jury could likewise find that such conditions combined and cooperated to persuade Baird, as a reasonably prudent man, that his look was adequate to discover any train in time to avoid collision. If a reasonably prudent man would have been aware that his views were inadequate and that he was moving into a blind crossing, it was plaintiff's duty to take commensurate caution. We cannot say that reasonable minds could come only to the conclusion that Baird had an adequate view under all the circumstances.

■ Contributory negligence is, ordinarily, a question for the jury. Chesapeake & Ohio Ry. Co. v. Hicks' Adm'r., 248 Ky. 510, 58 S.W.2d 910; Cincinnati, Newport & Covington Ry. Co. v. Henneberry, 253 S.W.2d 7 (Ky.1952); Louis-

ville & N. Ry. Co. v. Ratliff's Adm'r, supra, 260 Ky. 380, 85 S.W.2d 1006. We are of the opinion that under the evidence in this case, plaintiff's contributory negligence was a jury question.

Judgment affirmed.