**James Donald MITCHELL, Plaintiff-Appellant,**

v.

**UNITED STATES of Amercia, Defendant-Appellee.**

No. 17932.

United States Court of Appeals Sixth Circuit.

June 25, 1968.

Robert D. Simmons, Bowling Green, Ky., for appellant, Allender, Simmons & Robertson, Bowling Green, Ky., on brief.

Philip Huddleston, Asst. U. S. Atty., Louisville, Ky., for appellee, Ernest W. Rivers, Asst. U. S. Atty., Louisville, Ky., on brief.

Before EDWARDS, CELEBREZZE and COMBS, Circuit Judges.

PER CURIAM.

Plaintiff-Appellant originally brought this suit in the Circuit Court of Green County, Kentucky, against Ernest L. Wright, as an individual defendant. Since the traffic accident upon which the suit was based occurred while Mr. Wright was acting in the scope of his employment as Superintendent of the Abraham Lincoln Birthplace National Historic Site, the United States substituted itself as party-defendant and had the case removed to the United States District Court for the Western District of Kentucky. In the District Court the Government counterclaimed for damage to its property and the case was tried to the Court without a jury pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1346(b) and (c). The Court rendered judgment for the Defendant on the Plaintiff's claim and for the Plaintiff on Defendant's counterclaim. Only the

Plaintiff has appealed contending that the Court's verdict on the primary claim was based on an erroneous interpretation of the law.

The factual situation is rather simple, although on the determinative issues there is a considerable conflict in the evidence. Plaintiff and Mr. Wright were traveling in the same direction on Kentucky Highway 61, which is a two-lane road. Plaintiff was in the lead vehicle, a pick-up truck; and Mr. Wright was about a quarter of a mile behind when the Plaintiff's vehicle first came into view. Plaintiff, who was intending to turn left onto a gravel road a few hundred yards up the highway, testified that he checked his rear view mirror and saw the Studebaker Lark driven by Mr. Wright and saw that the car " * * * was coming up on [him] a little bit fast * * * " He also testified, however, that several hundred yards from the intersection he gave both a blinker signal and a hand signal of his intention to turn left and that he checked his rear view mirror before turning and did not see a car attempting to pass him in the left-hand lane.

On the other hand, Mr. Wright testified that as he approached the Plaintiff's truck no signal of an intention to change direction was given and that if a signal had been given he would have been able to see it. Mr. Wright also testified, however, that he gave no horn signal of his intention to pass as required by KRS § 189.340. As a result of neither driver knowing what the other was doing, the Plaintiff turned left as Mr. Wright was passing his truck on the left, and the two vehicles collided.

Although the Plaintiff raises an issue concerning the sufficiency of the evidence, his primary contention is that the District Court erroneously placed the burden on the Plaintiff to prove that he was free from contributory negligence. If that contention is accurate, the Court committed reversible error; for both in the federal courts, Winn v. Consolidated Coach Corporation, 65 F.2d 256 (6th Cir. 1933), and in the Kentucky courts, see Rule 8.03 Ky.R.C.P. and Baird v. Cincinnati, New Orleans & Texas Pacific Railway Co., 315 F.2d 717, 720 (6th Cir. 1963) (applying Kentucky law), contributory negligence is an affirmative defense, and the burden of proving it lies with the defendant. Since the District Court issued an oral opinion from the bench, we do not have the benefit of clear-cut findings of fact and conclusions of law; nevertheless, we believe that on the issue of contributory negligence the District Court did place the burden of proof on the wrong party.

In its opinion the District Court stated:

"The burden being on the plaintiff to sustain his case by proof, also to the extent that he, himself, was not contributorily negligent, has not been sustained by the plaintiff here."

While this statement is somewhat ambiguous, analysis of the Court's decision, lends other support to the conclusion that the burden of proof on this issue was placed on the wrong party. In so placing the burden of proof, the Court committed error.

The judgment is reversed and the case remanded for a new trial.

COMBS, Circuit Judge (concurring).

I concur in the result for reasons other than those stated in the majority opinion. The District Court's statement in regard to burden of proof doesn't give me any great concern. There being a counterclaim here and the District Court having found, after full hearing, that both parties were negligent, it seems to me that the academic question of who had the burden of proof becomes relatively unimportant.

I am of the opinion, however, that the District Court in weighing the evidence placed on plaintiff Mitchell too high a standard of care and on Wright, the driver of the Government's vehicle, too low a standard. Mitchell testified that he had observed through his rear view mirror that the Government vehicle was behind him in the right traffic lane.

He testified that five hundred to six hundred feet from the turnoff he turned on his mechanical signal for a left turn, and that he gave a hand signal for a left turn three hundred feet from the turnoff. He also testified that he had no warning that Wright wanted to pass. Wright admits that he did not sound his horn before attempting to pass. He therefore was in violation of K.R.S. 189.340 which makes it mandatory that the overtaking vehicle give an audible signal. Wright testified that he did not see Mitchell signal for a left turn and, if the District Court had held that Mitchell failed to give a proper signal, I would vote to affirm the judgment. But, he did not make such a finding. As I read his remarks from the bench, he held that Mitchell was negligent for failure to anticipate that the Government car might overtake him and attempt to pass. For instance, he stated that since Mitchell had observed the car behind him "that relieves Mr. Wright of giving any warning." This I think was error.

Mitchell was driving his pick-up truck at a reasonable rate of speed on a straight stretch of road in broad daylight. Even though he had observed the Government car behind him, he had the right to expect that this car would not attempt to pass without the driver giving warning of his intention. In the absence of such a warning and assuming— as the District Court apparently did —that Mitchell gave the proper left turn signals then, I think he did all that the law required of him. It is true that K.R.S. 189.350 requires the operator of a vehicle about to be overtaken and passed to give way to the right in favor of the overtaking vehicle, but this statutory duty is invoked by "audible signal being given by the overtaking vehicle." It is not required that a motorist keep a continuous lookout for vehicles behind him. He must use reasonable care in this respect, of course, but he must also keep a lookout ahead. Obviously it would be a physical impossibility for a driver to keep a continuous lookout through his rear view mirror for vehicles behind him and at the same time keep a lookout ahead.

The point I make is that under the circumstances here shown, and again assuming that Mitchell gave the proper left turn signals whereas Wright attempted to pass without giving an audible signal, the judgment should have gone for Mitchell. I think Collett v. Taylor, Ky., 383 S.W.2d 692 (1964) is more applicable to this case than are the cases cited by the District Court.

I realize that the District Court's finding of negligence by Mitchell is based on the reasoning that, since the right front fender of the Government car struck the left front fender of the Mitchell vehicle, Wright must have been immediately behind Mitchell, or even in the act of passing, when Mitchell made his turn. I do not think the case can be decided on this point. It seems to me the place of collision between the two vehicles and the point of impact would be determined by the relative rates of speed of the vehicles immediately before the collision. This we do not know with mathematical certainty.